**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lester W. GILBERT, Defendant–
Appellant.**

No. 94–2730.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 30, 1994.

Decided Jan. 30, 1995.

Gregory M. Gilmore, Springfield, IL (argued), for plaintiff-appellee.

James D. Green, Flynn, Palmer, Tague & Lietz, Champaign, IL (argued), for defendant-appellant.

Before FLAUM, RIPPLE, and GARZA,* Circuit Judges.

* The Honorable Emilio M. Garza, of the United States Court of Appeals for the Fifth Circuit, sitting by designation.

FLAUM, Circuit Judge.

Lester Gilbert pled guilty to one count of unlawful possession of a firearm by a convicted felon. 18 U.S.C. § 922(g)(1). The district court sentenced him to 188 months in prison. On appeal Gilbert presents two arguments. First, he asserts that the seizure of the firearm was pursuant to an illegal arrest and thus should have been suppressed. Second, Gilbert contends that the district court wrongly sentenced him under the Armed Career Criminal Act and under the Sentencing Guidelines. We hold that the district court properly denied Gilbert's motion to suppress and properly sentenced him. We thus affirm.

### I.

In October, 1993, Champaign County Sheriff Investigator Scott Swan arrested Cecil Relation on an outstanding burglary warrant. In exchange for a promise of leniency in connection with pending burglary charges, Relation provided Swan with information regarding approximately fifteen to twenty burglaries in the Champaign County area. Specifically, Relation told Swan that he had committed the burglaries with his three roommates: Lester Gilbert, Ernesto Gonzales, and Kathy O'Malley. Relation supplied Swan with detailed information about the burglaries, including their locations, the methods by which they were accomplished, the vehicles used, and the items taken. Relation additionally informed Swan that Gilbert and Gonzales had met in the Pontiac penitentiary when they were inmates in the same cellblock and had used and sold heroin. Relation also told Swan that Gilbert carried a handgun. Relation described the gun as a semi-automatic Colt with pearl handgrips. After receiving this information, Swan verified it and found all of the details to be accurate.

Relation informed Swan that Gilbert, O'Malley and Gonzales were contemplating an armed robbery of an Arby's restaurant. Relation agreed to help Swan and Bureau of Alcohol, Tobacco and Firearms ("ATF")

Agent Paul Vido catch Gilbert. At approximately 10:30 a.m. on November 2, 1993, Swan and other officers staked out Gilbert's residence. Around noon, Swan observed Relation and O'Malley leave the residence in a car. Relation and O'Malley drove to a nearby grocery store and paged Swan from there, an arrangement upon which Swan and Relation had previously agreed. Relation informed Swan that Gilbert and Gonzales would soon be leaving the residence in a blue station wagon to purchase drugs. Relation returned to the residence.

At about 1:10 p.m., Gilbert and Gonzales exited the house and drove away in a blue station wagon. Swan could not observe whether Gilbert was carrying a gun. Swan did not follow the station wagon because he was waiting for a call from Relation. At 2:40 p.m., Relation, O'Malley and an unidentified woman left the house again. Relation contacted Swan and told Swan that Gilbert was carrying the handgun in a shoulder holster and would be returning to the residence shortly. Five minutes later, Swan spotted Gonzales driving the car with Gilbert in the passenger seat. Swan followed the vehicle and turned on his red police light. Gonzales pulled into the driveway of the residence.[1] The district court found:

> Swan pulled up parallel to the passenger side, opened his door, pointed his firearm at the defendant, and said, "Lester, put your hands on the dashboard." Investigator Bolt drew up on the other side within about 10 seconds time and pointed his firearm at Gonzales. It is not clear what the defendant did. He apparently did not put his hands on the dashboard, but he did not do anything else either. Within a very brief period of time, Swan had opened the passenger door, seized the defendant by the collar, and hauled the defendant out onto the ground. In the process of that

maneuver, Swan had a clear view of the firearm in a shoulder holster carried by the defendant.

Gonzales was found to be carrying 13.2 grams of cocaine.

Gilbert was indicted on January 5, 1994, for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).[2] On February 4, 1994, Gilbert filed a motion to suppress evidence of the firearm seized on the day of his arrest. After hearing evidence, the district court denied Gilbert's motion. On March 2, 1994, Gilbert entered a guilty plea, contingent on his right to appeal the denial of his motion to suppress, in accordance with Rule 11(a)(2) of the Federal Rules of Criminal Procedure. Gilbert's sentencing hearing was held on July 15, 1994. In an Order of Final Disposition entered on July 19, 1994, the district court sentenced Gilbert to a prison term of 188 months, ruling that Gilbert was eligible for sentencing under the armed career criminal provisions of 18 U.S.C. § 924(e), because he had four previous violent felony convictions. This appeal followed.

## II.

■ Gilbert first argues that the district court erred in its denial of his motion to suppress the evidence of the handgun. Gilbert contends that Swan's apprehension of Gilbert was an illegal warrantless arrest and that the seized handgun, the fruit of that arrest, should not have been considered.[3] We review a district court's ruling on a motion to suppress evidence for clear error. *United States v. Evans*, 27 F.3d 1219, 1228 (7th Cir.1994); *United States v. Tilmon*, 19 F.3d 1221, 1224 (7th Cir.1994). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Tilmon*, 19 F.3d at 1224 (citing

---

1. Up to this point, the testimony of the officers and the defendant was, for the most part, consistent. There is disagreement, however, as to what transpired once Swan pulled Gilbert over. We adopt the district court's findings.

2. It is a federal crime for any person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year; ... to ship or transport in interstate or

foreign commerce, or possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1).

3. The district court expressly rejected the notion that this was a stop pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Neither party raises this issue on appeal.

*United States v. Rice,* 995 F.2d 719, 722 (7th Cir.1993)).

In order to make an arrest without a warrant, the police must have probable cause, under the totality of the circumstances, to reasonably believe that a particular individual has committed a crime. *See Evans,* 27 F.3d at 1228. The sole thrust of Gilbert's argument is that the police lacked probable cause to arrest him for possession of a weapon by a felon. The determination of probable cause involves "a practical, common-sense decision whether, given all of the circumstances set forth ... there is a fair probability that contraband or evidence of a crime will be found in particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *see Evans,* 27 F.3d at 1228; *United States v. Foxworth,* 8 F.3d 540, 543 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1414, 128 L.Ed.2d 85 (1994). While probable cause requires more than the mere suspicion, we do not require it to reach the level of virtual certainty. *See Gates,* 462 U.S. at 244 n. 13, 103 S.Ct. 2335 n. 13 ("probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity"); *United States v. Levy,* 990 F.2d 971, 973 (7th Cir.1993); *United States v. Burrell,* 963 F.2d 976, 986 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 357, 121 L.Ed.2d 270 (1992).

In examining the conduct of investigating police officers, we have held that "[p]olice officers have probable cause to make an arrest where 'the fact and circumstances within their knowledge and of which they [have] reasonably trustworthy information [are] sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Levy,* 990 F.2d at 973 (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)). "Trustworthy information" can include a tip from an informant, as long as the tip is reliable. *See Gates,* 462 U.S. at 238, 103 S.Ct. at 2332; *United States v. Scott,* 19 F.3d 1238, 1242 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 163, 130 L.Ed.2d 101 (1994). Reliability may be shown by the informant's past record of reli-

ability, through independent confirmation or personal observation by the police, or by other methods. *See Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

In the instant case, the district court did not clearly err when it concluded that "Officer Swan had a substantial basis for concluding that probable cause existed that the defendant was committing a crime." Swan had reasonably trustworthy information that the defendant was involved in criminal activity. Relation reliably informed Swan that Gilbert was carrying a handgun and that the defendant was a convicted felon. Moreover, for each piece of information which Relation provided, Swan either independently verified it or confirmed that Relation had first-hand knowledge of its accuracy.

First, Relation gave a detailed description of the gun to Swan as a Colt semi-automatic handgun with pearl handgrips. Relation was able to accurately identify the weapon because he lived in the same house with and had been shown the weapon by Gilbert. Relation also described the blue station wagon in which Gilbert would be travelling and Swan verified that a car matching that description was registered to a resident of the house in which Gilbert lived.

Furthermore, Relation provided Swan with detailed, accurate information of about 15 to 20 burglaries in the surrounding area in which Gilbert was involved. These details included: the location of the burglaries (including which building or business, and the address), how the burglars entered the dwellings, and what they stole. Swan was able to verify the details—some of which were not public information—with other local law enforcement officials.

Swan also had a reliable basis to believe that Gilbert was a convicted felon. Relation informed Swan that Gonzales and Gilbert had met while inmates together at Pontiac Penitentiary and had dealt and used narcotics. Swan contacted the penitentiary and confirmed that they indeed had lived together in the same cellblock. Swan also investigated Gilbert's criminal history and discovered that Gilbert had seven prior burglary convictions,

that he had been committed to the custody of the Illinois Department of Corrections, and that he was on parole at the time of the November, 1993 investigation.

In addition to providing information about past crimes and current actions, Relation accurately predicted Gilbert's future activities. Around noon on November 2, 1994, Relation informed Swan that Gilbert was carrying the gun in a shoulder holster and that he would be leaving the residence soon in a blue station wagon with Gonzales. Swan confirmed this information from his stakeout location. Later that day, Relation again contacted Swan and informed him that Gonzales and Gilbert would be returning shortly to the residence in the blue station wagon. Five minutes later, Swan observed Gilbert and Gonzales return to the residence in that vehicle.

Gilbert argues that the facts in the instant case are similar to those in *United States v. Mendonsa*, in which the Ninth Circuit held that under the totality of the circumstances, the district court had erred in not suppressing the evidence. 989 F.2d 366 (9th Cir. 1993). In *Mendonsa*, the police received an anonymous telephone tip to their local "Crime Stoppers" system from an individual who purportedly had witnessed the sale of marijuana at a certain house. The tipster described the house, its occupants, and the quantity of marijuana. The police later verified that the suspect lived in the house and was on parole for an armed robbery conviction. Based on these facts, the police obtained a search warrant, searched the suspect's house and seized drugs and a gun. In reviewing the conviction, the Ninth Circuit held that the police lacked probable cause to issue a search warrant. The court concluded that an anonymous tip, with little more, does not constitute probable cause. *Id.* at 368. Furthermore, the court emphasized that the police detective merely verified innocent facts and did not predict any significant future activity. *Id.* at 369.

*Mendonsa* is easily distinguishable from the instant case. First, unlike the tipster in *Mendonsa*, Relation was not an anonymous informant. To the contrary, Relation was working with the police on an ongoing investigation. While the police had no means by which to verify the reliability of the tipster's information about past drug sales in *Mendonsa*, Relation repeatedly established his veracity and accuracy. Second, while the informant in *Mendonsa* had merely happened upon the drug sale, Relation had an established relationship with Gilbert; in fact, Relation lived with Gilbert throughout the investigation and until the arrest. Third, unlike the tipster in *Mendonsa*, Relation predicted the future activities of Gilbert. Relation told Swan about all of Gilbert's actions on the day of the arrest, including a detailed description of the gun and its location on Gilbert's body.

The combination of all of the above factors gave Swan probable cause to arrest Gilbert. The police had "more than a mere suspicion that Gilbert was involved in criminal activity." *Foxworth*, 8 F.3d at 543; *see also United States v. Decoteau*, 932 F.2d 1205, 1207 (7th Cir.1991). Swan verified each piece of information provided by Relation. Furthermore, "the informant spoke from firsthand observation providing very specific and detailed information ..." *United States v. Fairchild*, 940 F.2d 261, 265 (7th Cir.1991). The mere fact Relation had made a deal with the police does not undermine his reliability, especially in light of Swan's confirmation of the information and the fact that Relation implicated himself as well as Gilbert in the prior burglaries. Since probable cause existed to make the warrantless arrest, the Fourth Amendment was not violated.

## III.

Gilbert also challenges the calculation of his sentence under the Sentencing Guidelines. In sentencing him, the district court determined that the base offense level for the substantive crime was 14. It enhanced the sentence by 4 points for possession of a firearm in connection with a drug offense and reduced the sentence by 3 points for acceptance of responsibility, resulting in an offense level of 15. The district court also applied Chapter 4 of the Sentencing Guidelines concerning criminal history and criminal livelihood. Because Gilbert had 3 previous convictions for violent felonies, his conviction for

possession of a firearm required that he be given an enhanced sentence under the Armed Career Criminal Act ("ACCA"). 18 U.S.C. § 924(e). The district court concluded that that status, combined with Gilbert's use of a firearm in connection with a controlled substance offense, less a 3 point reduction for acceptance of responsibility, resulted in an offense level of 31, and a category VI criminal history. U.S.S.G. § 4B1.4(b). The court imposed a sentence of 188 months in prison—the lowest sentence within the guideline range.

■ Gilbert challenges this sentence on two grounds. He first contends that the district court erred in sentencing him under the ACCA. Second, Gilbert maintains that the district court erroneously found that he possessed a gun in connection with a drug offense. We review the district court's findings of fact only for clear error, *United States v. McGill*, 32 F.3d 1138, 1143 (7th Cir.1994) (citing 18 U.S.C. § 3742(e)); *United States v. Atkinson*, 979 F.2d 1219, 1222 (7th Cir.1992), and the court's legal determinations *de novo*. *United States v. Lacour*, 32 F.3d 1157, 1159 (7th Cir.1994); *United States v. Prevatte*, 16 F.3d 767, 779 (7th Cir.1994).

**A.**

Gilbert first argues that he was not eligible for sentence enhancement under the ACCA because he only had two—and not three or more—prior violent felony convictions.[4] Under the ACCA, "a thrice convicted felon, who is subsequently convicted for the unlawful possession of a firearm, is subject to a mandatory sentence of not less than fifteen years provided that the three prior convictions resulted from acts *'committed on occasions different from one another....'*" *United States v. Hudspeth*, 42 F.3d 1015, 1019 (1994) (en banc) (quoting 18 U.S.C. § 924(e)(1)). In *Hudspeth* this Court recently reexamined the ACCA's "committed on occasions different from one another" language of § 924(e)(1). Relying on our circuit precedent in *United States v. Schieman*, 894 F.2d 909, 911 (7th

Cir.), *cert. denied*, 498 U.S. 856, 111 S.Ct. 155, 112 L.Ed.2d 121 (1990) and *United States v. Godinez*, 998 F.2d 471 (7th Cir. 1993), a divided en banc court concluded that we look "to the nature of the crimes, the identities of the victims, and the locations." *Hudspeth*, 42 F.3d at 1019. In addition to these considerations, the court emphasized the importance of examining whether "the perpetrator had the opportunity to cease and desist from his criminal actions at any time." *Id.*

■ Gilbert was convicted of a burglary in 1978. In addition, in two separate trials in 1972, Gilbert was convicted of burglarizing five public school buildings over a three day period. Each burglary involved separate schools, different victims, and distinct locations. Gilbert asserts that the 1972 burglary convictions constitute only one violent felony for the purposes of § 924(e), thus leaving him ineligible for the enhanced sentence under the ACCA because he has only two (1972 and 1978) violent felony convictions.

This argument fails, however, in light of the plain language of § 924(e)(1) and our decision in *Hudspeth*. First, Gilbert's acts were clearly committed on "occasions different from one another." Furthermore, in *Hudspeth*, the court held that the defendant had three convictions because he had "committed three distinct burglaries against three separate victims ... in three separate locations over the course of more than thirty minutes." *Hudspeth*, 42 F.3d at 1021. Likewise, Gilbert's 1972 burglaries did not occur during a single episode or simultaneously. Rather, they occurred over a three day period at separate locations. Moreover, different people were the victims of each burglary. Gilbert's transgressions were even more clearly three separate crimes against three separate victims at three separate locations than those of the defendant in *Hudspeth*, in which the defendant broke into a shopping mall and burglarized three adjacent, yet separate stores in under an hour. Gilbert is

---

**4.** 18 U.S.C. § 924(e)(1) states:
"In the case of a person who violates section 922(g) of this title and has three previous convictions by any court ... for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years."

precisely the "defendant who has the opportunity to cease and desist or withdraw from his criminal activity at any time, but who chooses to commit additional crimes [and thus] deserves harsher punishment ..." *Hudspeth,* 42 F.3d at 1021.

## B.

■ Gilbert next argues that the district court improperly enhanced his sentence by finding that he possessed a firearm in connection with a drug offense under U.S.S.G. § 4B1.4(b)(3)(A). The district court found Gilbert eligible for sentencing under the ACCA and gave him an offense level of 34, which the court reduced to 31 for acceptance of responsibility.

Section 4B1.4(b)(3)(A) states that a defendant can be sentenced as an armed career criminal with an offense level of 34 "if the defendant used or possessed the firearm or ammunition in connection with a crime of violence or controlled substance offense, as defined in § 4B1.2(1)...." The Guidelines define "controlled substance offense" as "an offense ... prohibiting the manufacture, import, export, distribution or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute or dispense." U.S.S.G. § 4B1.2(2). The commentary to this section further provides that " 'controlled substance offense' includes the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." U.S.S.G. § 4B1.2, comment. (n. 1); *see also United States v. Linnear,* 40 F.3d 215 (7th Cir.1994); *United States v. Damerville,* 27 F.3d 254, 256 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 445, 130 L.Ed.2d 355 (1994).

The district court found that Gilbert "did make subsequent statements to ATF agents concerning his knowledge about the presence of cocaine. He also made statements that he possessed the weapon for his protection in cocaine trafficking." For these reasons, the court concluded that Gilbert possessed the firearm in connection with a narcotics offense.

■ We review a district court's application of a sentencing enhancement under U.S.S.G. § 4B1.4(b)(3)(A) for clear error. *United States v. Skinner,* 986 F.2d 1091, 1095 (7th Cir.1993). Because the finding of possession of a gun in connection with a drug trafficking offense involves a "mixed" question of fact and law, Gilbert has the burden of demonstrating that it was clearly erroneous. Given this highly deferential standard, "where there are two permissible views of evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *Skinner,* 986 F.2d at 1095. Under this standard, we will only upset the district court's findings if, after reviewing the "entire evidence," we are "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

While we may have decided the case differently, we cannot conclude that the district court clearly erred in its findings. *See Anderson,* 470 U.S. at 573, 105 S.Ct. at 1511 (the clearly erroneous standard "plainly does not entitle a reviewing court to reverse the trier of fact simply because it is convinced that it would have decided the case differently"). First, at the time of his arrest, Gilbert was travelling in the same car with Gonzales, who possessed 13.2 grams of cocaine. Second, Gilbert explained to Chris Bolt, an investigator with the Champaign County Sheriff's Department that he carried a gun because the cocaine trade was dangerous. Specifically, during the sentencing hearing, Bolt testified that the defendant stated that he possessed the firearm because: "the cocaine trade was rather rough and that he had encountered two occasions where he had been shot at. He also told us that he had made—that he was making three or four trips a week to Chicago to purchase one to two ounces of cocaine." Special Agent Fritzsche of the Bureau of Alcohol, Tobacco and Firearms testified that Gilbert carried the firearm for protection, in part for "when he went [to Chicago] to get cocaine and marijuana." Third, the quantity of cocaine, 13.2 grams, suggests that the drugs were for resale, not personal use. Finally, and perhaps most importantly, Relations specifically

informed Swan before the arrest that Gilbert and Gonzales would be leaving the house to purchase drugs.

In light of this evidence, it is at least plausible that Gilbert and Gonzales left the house to purchase drugs, returned with 13.2 grams of cocaine, and that Gilbert carried his gun for protection during the purchase. *See Anderson,* 470 U.S. at 573–74, 105 S.Ct. at 1511 ("If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it...."). Consequently, since we are not left with a firm and definite conviction that error has been committed, we affirm the district court's finding that Gilbert possessed a gun in connection with a narcotics offense.

For the foregoing reasons, the district court's ruling on the motion to suppress and its sentencing is AFFIRMED.