**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Gregory RUCKER, Defendant–Appellant.**

**No. 97–2468.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 9, 1998.

Decided March 16, 1998.

K. Tate Chambers, Office of the United States Attorney, Peoria, IL, Stephen A. Kubiatowski (argued), Office of the United States Attorney, Springfield, IL, for Plaintiff–Appellee.

George F. Taseff (argued), Office of the Federal Public Defender, Peoria, IL, for Defendant–Appellant.

Before FLAUM, RIPPLE and ROVNER, Circuit Judges.

RIPPLE, Circuit Judge.

Gregory Rucker entered a conditional guilty plea to a charge of possession of cocaine base (crack) with intent to distribute in violation of 21 U.S.C. § 841(a)(1). He was sentenced to 37 months of imprisonment to be followed by four years of supervised release. As permitted by the terms of the conditional plea, see Fed.R.Crim.P. 11(a)(2), he now appeals the district court's denial of the motion to suppress the drugs that form the basis of the underlying charge. We affirm the judgment of the district court because we believe that the officers had probable cause to arrest Mr. Rucker and therefore were authorized to seize the drugs in a search incident to arrest.

I

BACKGROUND

Facts

On August 30, 1996, while on foot patrol in the Warner Homes, a multi-unit housing complex in Peoria known for its drug trafficking and crime, Officer Douglas Theobald received a tip from a confidential informant

that "Greg" was standing near Weezy's Tavern and was in possession of cocaine in his shoe. In response to the officer's inquiry, the informant confirmed that "Greg" was Greg Rucker. He described "Greg"—he was wearing a black outfit and was driving a green Cadillac.

Officer Theobald, the policeman assigned to the Warner Homes area, knew Mr. Rucker. He had arrested him on one occasion on a traffic warrant and had recovered a handgun from him on another occasion during a traffic stop. He also knew that, in July 1996, Mr. Rucker had been arrested by other officers and, when searched at the county jail, had been found to have crack hidden in his shoe.[1] Officer Theobald himself had seen Mr. Rucker in and out of the green Cadillac "for the past week, maybe two weeks." R.18 at 33. In addition, Officer Theobald also believed that the informant was reliable. This individual had given Officer Theobald correct information before. On one occasion, the informant had given him information about an apartment in the Warner Homes complex. He had informed the officer that, at a specified time, a specified person would leave the apartment with a large amount of money; moreover, a quantity of cocaine would be found either on that person or in the apartment. At the time specified by the informant, the person came out of the apartment. Money was found on the person and cocaine was found in the apartment.

Officer Theobald contacted Officers Moore and Couve of the Peoria Vice and Drug Unit and conveyed the information that he knew to them.[2] Officer Moore also knew that Mr. Rucker had been arrested in the Warner Homes for possessing a pistol. When they drove by Weezy's, the officers saw that Mr. Rucker was standing across the street and was wearing black clothes. Officers Moore and Couve then stopped Mr. Rucker and conducted a pat-down frisk. At that time, Officers Theobald and Glover also arrived on the scene. Officer Moore asked Mr. Rucker to kick off his oversized shoes. Mr. Rucker protested, saying that the officers were violating his constitutional rights. Then the officers handcuffed Mr. Rucker and slid off his shoes. According to Officer Theobald, the shoes were tennis shoes and were oversized for Mr. Rucker's feet. Inside the shoes, the officers found 3 baggies containing 21 grams of crack. Mr. Rucker was also in possession of two pagers. The officers placed Mr. Rucker inside the squad car and inventoried the Cadillac.[3] They found $380 in the vehicle. After being given *Miranda* warnings at the vice and drug office, Mr. Rucker admitted that he had sold $200 of crack that day and that he had sold the substance in that area 10 or 11 times over the past two weeks.

The district court denied Mr. Rucker's motion to suppress on two grounds. The court first concluded that the police had probable cause to arrest Mr. Rucker. In the alternative, the court held that the police made a lawful *Terry* stop and pat-down search.

## II

## DISCUSSION

We review de novo the determination of the district court as to the existence of probable cause. Of course, unless they are clearly erroneous, the district court's findings of adjudicative fact must be accepted in our analysis. *See Ornelas v. United States,* 517 U.S. 690, 696–98, 698–700, 116 S.Ct. 1657, 1662, 1663, 134 L.Ed.2d 911 (1996).

In arguing that the police lacked probable cause to arrest him, Mr. Rucker asserts that he was accosted by the police

---

1. Officer Jackson testified that he had told Officer Theobald about Mr. Rucker's arrest in July and the crack in his shoe because Theobald "works the walking beat down there, and that's my district, so we kind of exchange information on what goes on with the arrests and things like that." R.18 at 2627.

2. Officer Theobald testified that he drove by the location, verified that Mr. Rucker was there, identified him, and contacted Officer Moore and Officer Couve to inform them of Mr. Rucker's exact location.

3. Officer Theobald testified that the Cadillac was parked in the Urban League parking lot "right on the other side of the street." R.18 at 38. During the suppression hearing before the district court, Mr. Rucker challenged the inventory search, but he has not renewed that argument in this court.

outside a restaurant on a public sidewalk in broad daylight while he was doing nothing unusual or illegal. He contends that, at the time of the confrontation, the police lacked information of the quality necessary to constitute probable cause. In his view, that information was not trustworthy because its source was a confidential informant. Mr. Rucker cites cases involving anonymous tips that require "indicia of reliability" and relies most heavily on *United States v. Roberson*, 90 F.3d 75 (3d Cir.1996). In that decision the Third Circuit held that the police, who had received a "fleshless anonymous tip of drug-dealing that provides only readily observable information" and did not observe any suspicious behavior, did not have reasonable suspicion for an investigative stop. *Id.* at 80. Here, Mr. Rucker argues, the tip did not give details of future actions by others or other such specific information; it simply asserted that "Greg" had cocaine in his shoe.

■ In evaluating this contention, we begin with the basic rule that, "[i]n order to make an arrest without a warrant, the police must have probable cause ... to reasonably believe that a particular individual has committed a crime." *United States v. Gilbert*, 45 F.3d 1163, 1166 (7th Cir.1995). A determination of whether there was probable cause requires an evaluation of the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). It is a "practical, nontechnical conception," *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949), that requires that the police and the courts deal with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* at 175, 69 S.Ct. at 1310. For these reasons, the Supreme Court has stressed that it is a "fluid concept—turning on the assessment of probabilities in particular factual contexts." *Gates*, 462 U.S. at 232, 103 S.Ct. at 2329. In that overall assessment, "[i]nformants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability." *Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972). In the end, police officers have probable cause to make a warrantless arrest

when they have trustworthy information sufficient to warrant a prudent person in believing that the suspect had committed or was committing an offense. *See Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225–26, 13 L.Ed.2d 142 (1964). "Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." *Brinegar*, 338 U.S. at 176, 69 S.Ct. at 1311.

■ The reliability of an informant's information "may be shown by the informant's past record of reliability, through independent confirmation or personal observation by the police, or by other methods." *Gilbert*, 45 F.3d at 1166. Here, we believe that this combination of factors known to the officers, when assessed as a totality, cannot fairly be characterized as an arrest based on an anonymous tip. We think it is important that the informant was not unknown to the officer; nor was he an individual of unknown reliability. Although apparently not an informant of long standing, he had supplied Officer Theobald with detailed information in the past that had proven accurate. *See United States v. Navarro*, 90 F.3d 1245, 1254 (7th Cir.1996) (finding that officers had probable cause for arrest and search based on reliability of informant's accurate and detailed tip); *United States v. Scott*, 19 F.3d 1238, 1242 (7th Cir.) (finding that police had probable cause to arrest defendant for drug trafficking based on information from two reliable informants who identified defendant Leroy Scott as "Roy" and as a drug dealer), *cert. denied*, 513 U.S. 857, 115 S.Ct. 163, 130 L.Ed.2d 101 (1994).

It is also relevant that the officer to whom this information was imparted was no stranger to the immediate surroundings; as the officer on the walking beat in the Warner Homes, he was in an especially advantageous position to make a quick evaluation concerning the significance of the information he just had been told. The officer knew this high drug trafficking area and knew who Mr. Rucker was. Indeed, Officer Theobald was familiar with Mr. Rucker's earlier brushes with the law: He had handled the arrest of Mr. Rucker on a traffic warrant and had

conducted a traffic stop in which he recovered a handgun from Mr. Rucker; moreover, he knew that Officer Moore also had arrested Mr. Rucker for possession of a pistol. Thus, he was able to evaluate what he just had been told in light of his training and experience in that neighborhood and of Mr. Rucker's criminal history. *See Ornelas*, 517 U.S. at 700, 116 S.Ct. at 1663 ("[O]ur cases have recognized that a police officer may draw inferences based on his own experience in deciding whether probable cause exists."); *Gerstein v. Pugh*, 420 U.S. 103, 113–14, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975) ("[A] policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime ...."); *cf. United States v. Brown*, 64 F.3d 1083, 1086 (7th Cir.1995) ("An officer on the beat must be allowed latitude to make snap judgments, subject to the requirement of reasonableness."). In addition, Mr. Rucker had been arrested in the same area, with cocaine hidden in his shoe, just the month before. The modus operandi (carrying the drugs in his oversized shoe) described to him by the informant was the modus operandi used by Mr. Rucker in his earlier encounter with the police drug enforcement agents.[4]

Officer Theobald's colleagues were also aware of Mr. Rucker's earlier encounter with the law and of his use of the shoe to conceal his drugs. Armed with this information as well as the description of the clothing Mr. Rucker was wearing, his location and the vehicle in his use, the officers found matters as the informant said they would.

Under these circumstances, we think that the officers acted with probable cause when they arrested Mr. Rucker and that the subsequent search of his shoe was justified as a search incident to an arrest. Accordingly, the district court was correct in its decision to deny the motion to suppress.

4. In *Gates*, 462 U.S. at 232 n. 7, 103 S.Ct. at 2329 n. 7, the Supreme Court gave examples of its prior decisions reflecting the "diversity of informants' tips" and "the usefulness of the totality-of-the-circumstances approach." One such case was *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), in which the police

### Conclusion

The judgment of the district court is affirmed.

**AFFIRMED.**

knew of the modus operandi of a marijuana dealer and recognized the identical modus operandi during a subsequent marijuana sale. On that basis, the Supreme Court concluded that the police clearly had sufficient information to have probable cause for a drug search.