In the

# United States Court of Appeals
### For the Seventh Circuit

No. 02-2130

MICHAEL B. SMITH,

*Plaintiff-Appellant,*

*v.*

DOUGLAS LAMZ and the VILLAGE OF ALGONQUIN,
a municipal corporation,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 00-C-50074—**Philip G. Reinhard**, *Judge.*

ARGUED DECEMBER 9, 2002—DECIDED MARCH 5, 2003

Before BAUER, RIPPLE, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* When Michael B. Smith arrived at the offices of the Algonquin Dental Associates to collect donations for police unions and other organizations, he was arrested for the crime of impersonating a police officer, a felony under Illinois law. The charges were subsequently dropped, and Smith sued the Village of Algonquin and the arresting officer, Douglas Lamz, under 42 U.S.C. § 1983 and applicable state law alleging malicious prosecution. Lamz and the Village moved for summary judgment and the district court granted the defendant's motion. Smith appeals. Because the uncon-

tested facts establish that Smith's arrest was supported by probable cause, we affirm.

Before we relate the operative facts, we resolve Smith's procedural challenge. He argues that the district court abused its discretion in deeming admitted for purposes of summary judgment all the facts set forth in the defendants' statement of material facts. We have considered Smith's numerous attacks on this decision, and find them all unavailing.

Under Local Rule 56.1, the defendants, as movants for summary judgment, were required to submit in support of their summary-judgment motion a statement of material facts, comprised of short numbered paragraphs with citations to admissible evidence,[1] which they did. In his response materials, Smith was required to respond particularly to each numbered paragraph and, in the case of disagreement, provide citations to supporting evidentiary material. Moreover, should there have been any additional facts, not set forth in the movant's papers, which required denial of the defendant's motion,

---

[1] Local Rule 56.1(a) provides

> Moving Party. With each motion for summary judgment . . . the moving party shall serve and file—
>
> . . .
>
> > (3) a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law . . . .
>
> The statement referred to in (3) shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion.

N.D. ILL. L.R. 56.1(a).

Smith was required to submit his own concise statement, supported by citations to the record.[2] Smith admittedly did not follow this mandatory procedure. He chose instead—for the court's convenience—to discuss in his brief only the "two or three dispositive issues" of the case, ignoring the remainder of the defendants' statement (*see* Smith App. Br. at 19-20). In doing so, he failed in his obligation to respond with particularity to the statement of material facts submitted by the defendants. Additionally, Smith sought to support his factual disagreements by affixing to his brief assorted material, totaling over one hundred pages. But with his concern for

---

[2]  Local Rule 56.1(b) provides

> Opposing Party. Each party opposing a motion [for summary judgment] shall serve and file—
>
> . . .
>
> (3) a concise response to the movant's statement that shall contain:
>
> > (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
> >
> > (B) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.

N.D. ILL. L.R. 56.1(b); *see also Brasic v. Heinemann's Bakeries, Inc.*, 121 F.3d 281, 286 (7th Cir. 1997) (finding the nonmoving party's response must contain "appropriate specific references to the record").

the court's convenience apparently waning, Smith did not provide the court with appropriate citations to any of it (nor did he ensure that he attached only admissible evidence). Here, he has failed in his obligation to support controverted or additional facts with citations to admissible evidence.

Local Rule 56.1's enforcement provision provides that when a responding party's statement fails to controvert the facts as set forth in the moving party's statement in the manner dictated by the rule, those facts shall be deemed admitted for purposes of the motion. N.D. ILL. L.R. 56.1(b). We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission. *See, e.g.*, *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 689 (7th Cir. 2000).

A district court is not required to "wade through improper denials and legal argument in search of a genuinely disputed fact." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). And a mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material. *Edward E. Gillen Co. v. City of Lake Forest*, 3 F.3d 192, 196 (7th Cir. 1993). In short, "[j]udges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Smith's summary-judgment materials were woefully deficient in either responding adequately to the defendants' statement or in setting forth additional facts with appropriate citations to the record. As such, Smith's purportedly good intentions aside, the district court did not abuse its discretion in deeming admitted and only considering the defendants' statement of material facts.

Turning now to those facts, we learn the following: On the morning of January 23, 1998, Detective Lamz of the

Algonquin Police Department received a telephone call from Karen S. Jurasek, an employee of the Algonquin Dental Associates, informing Lamz that she had just received a telephone call from a man identifying himself as being "from the Algonquin Police Department," who was interested in selling her advertising space in a soon-to-be-published magazine. Jurasek said she agreed to make a $150 donation, and the caller was to come to the office later that day to collect. She told Lamz, however, that her employer had decided not to contribute after all and that she needed to cancel the office's donation.

In response to Jurasek's comments, Lamz told her that Algonquin police officers do not solicit money from residents or businesses and that no Algonquin police officers should be collecting money in the name of the police department. Lamz directed Jurasek to stall the man should he come to collect the check and to contact the police immediately upon the caller's arrival.

The caller was, of course, Smith, who showed up at the dental office later that day to collect. Jurasek did as she was told, stalling Smith until the police could arrive. Lamz came himself and questioned Smith, Jurasek, and another dental employee, Victoria Carlson. Both Jurasek and Carlson told Lamz that Smith had declared on the phone and at the front window of the dentist's office that he was "from the Algonquin Police Department."

As it turns out, Smith was actually employed by a company called Triad Promotions, Inc., which had been retained by the Metropolitan Alliance of Police Unions to solicit donations on its behalf. Smith explained this to Lamz, insisted that Jurasek and Carlson must have misunderstood him, and denied identifying himself as an Algonquin police officer.

Jurasek and Carlson, however, reiterated they were "absolutely certain" that Smith had told them he was

"from the Algonquin Police Department," and they both wrote and signed contemporaneous statements to that effect. In a conversation with Lamz, McHenry County Assistant State's Attorney Mary Lennon approved charging Smith with false impersonation of a police officer and theft by deception. As a result, Lamz arrested Smith.

Of Smith's remaining challenges, which attack the district court's decision on the merits, the only one warranting discussion is whether the district court erred in finding that Lamz had probable cause to arrest Smith and was therefore entitled to qualified immunity. We begin by noting that Smith may not maintain an action under § 1983 for malicious prosecution. *Newsome v. McCabe*, 256 F.3d 747, 750-51 (7th Cir. 2001) (interpreting the effective holding of *Albright v. Oliver*, 510 U.S. 266 (1994), in accordance with its narrowest ground of decision, to be that the opportunity for state-law remedies for wrongful-prosecution claims precludes any constitutional theory of the tort). Rather, the district court was correct in treating Smith's claim as one for unlawful arrest in violation of his Fourth Amendment rights. *Id.* Under the doctrine of qualified immunity, probable cause to arrest will defeat an unlawful-arrest claim. *See Jenkins v. Keating*, 147 F.3d 577, 585 (7th Cir. 1998) (officer has probable cause, and is therefore entitled to qualified immunity, for arresting alleged culprit so long as reasonably credible witness or victim informs the police that the suspect has committed a crime, even if the arrestee is later found to be innocent).

The determination of probable cause is normally a mixed question of law and fact, *Ornelas v. United States*, 517 U.S. 690, 696 (1996), but when "what happened" questions are not at issue, the ultimate resolution of whether probable cause existed is a question of law, which we review *de novo*. *Cervantes v. Jones*, 188 F.3d 805, 811 (7th Cir. 1999). In order to determine whether prob-

able cause existed for an arrest, we ask whether, at the time of the arrest, the facts and circumstances within the officer's knowledge were sufficient for the officer to form a reasonable belief to suspect criminal activity. *Qian v. Kautz*, 168 F.3d 949, 953 (7th Cir. 1999). The officer need only demonstrate "a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Gilbert*, 45 F.3d 1163, 1166 (7th Cir. 1995) (quotations omitted). And when a police officer receives information sufficient to raise a substantial chance of criminal activity from a person whose truthfulness he has no reason to doubt, that information is sufficient to establish probable cause. *Jenkins*, 147 F.3d at 585.

Unquestionably, the facts as known to Lamz at the time of the arrest establish that he had probable cause to suspect Smith of criminal activity. Under Illinois law, false personation of a peace officer occurs when "a person . . . knowingly and falsely represents himself to be a peace officer of any jurisdiction." 720 ILL. COMP. STAT. 5/32-5.1 (2003). Jurasek and Carlson informed Lamz, both orally and in writing, that the plaintiff told them he was "from the Algonquin Police Department." Arguing semantics, Smith asserts that since Lamz knew he did not utter the words, "I am an Algonquin police officer," he did not commit the offense. But the arresting officer Lamz is not charged with the duty of judge and jury at the moment of arrest, deciding whether the statement "I am from the Algonquin Police Department," is ultimately sufficient to establish guilt of the crime of impersonating an officer. *See Gilbert*, 45 F.3d at 1166. Instead, the appropriate question is whether an officer in Lamz's position would reasonably believe on the basis of that statement that there was "a probability or substantial chance of criminal activity." *Id.* (quotations omitted). On the facts before us, that Lamz could

have reasonably so believed is supported not only by Smith's chosen words themselves, but also by the fact that those words conveyed the impression upon the listener that he was an Algonquin police officer. Jurasek had thought as much when speaking with Smith on the phone: afterwards, she called the Algonquin Police Department to cancel the donation. We thus conclude that Lamz possessed probable cause on the basis of these statements to arrest Smith for the crime of impersonating a police officer.

Smith had argued to the district court that Lamz's testimony regarding what Jurasek and Carlson told him was not credible. In other words, Smith argues that Jurasek and Carlson never told Lamz that Smith had represented to them that he was "from the Algonquin Police Department." Because Smith did not controvert this fact appropriately in his summary-judgment submissions, Smith has provided no evidence to support his allegation. But even if we could look past this procedural bar and examine the "evidence" he attempts to introduce on this point, we would find that it would not raise an issue of fact regarding whether Lamz had probable cause to arrest. Smith only argues that Jurasek and Carlson later recanted their original statements in an unsworn interview with Smith's private investigator. Such evidence, even if properly asserted within Smith's brief, would still be inadmissible hearsay.[3] But more importantly, both Jurasek and Carlson

---

[3] Conversely, Jurasek's and Carlson's original oral and written statements are not hearsay. They were not introduced to prove the truth of the matter asserted—that is, that Smith in fact told Jurasek and Carlson he was "from the Algonquin Police Department"—but rather to show the effect on the hearer of Jurasek's and Carlson's statements, Lamz—that is, that upon
(continued...)

wrote and signed their own statements implicating Smith at the time of his arrest. Armed with this contemporaneous documentation written by the witnesses themselves, the importance of Lamz's credibility is diminished. On the basis of both Jurasek's and Carlson's contemporaneous written statements, we find that Lamz had probable cause to suspect that Smith had committed the offense of impersonating an officer. The district court correctly found that he was entitled to qualified immunity on this charge.

For the foregoing reasons, the decision of the district court is AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*

---

[3]  (...continued)
hearing Jurasek's and Carlson's statements, Lamz believed that Smith had told them he was "from the Algonquin Police Department." *See* FED. R. EVID. 801(c). Smith's statement to Jurasek and Carlson falls within the party-admission exemption to the rule. FED. R. EVID. 801(d)(2)(A).

---