CITIBANK, N.A., Plaintiff,

. v.

AUTOMART INTERNATIONAL, INC., Cherng–Chyang Liou, and Bee June Cheng, Defendants.

Case No. 14 C 169.

United States District Court, N.D. Illinois.

Signed Oct. 21, 2014.

Todd A. Rowden, Cheryl Kelly, Emily Louise Peel, Thompson Coburn LLP, Chicago, IL, for Plaintiff.

Barbara L. Yong, Brianna L. Golan, Caren A. Lederer, Golan & Christie LLP, Chicago, IL, for Defendants.

### *ORDER*

RONALD A. GUZMÁN, District Judge.

For the reasons stated below, Citibank's motion for summary judgment as to Automart and Bee June Cheng [52] is granted.

### *STATEMENT*

Citibank moves for summary judgment against defendants/third-party plaintiffs Automart International, Inc. and Bee June Cheng (collectively, "Defendants") as to Counts I (breach of note and loan agreement against Automart) and III (breach of guaranty against Bee June) of the complaint. Automart concedes it has no defense to Count I and agrees that judgment should be granted in Citibank's favor as to that count.

**Facts**

Defendants did not file a Local Rule 56.1(b)(1)(3) response to Citibank's statement of undisputed facts. Therefore, the Court deems the following facts admitted. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir.2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission.").

Citibank is a national banking association with its main office in Sioux Falls, South Dakota, is a citizen of the state of South Dakota, and has its principal place of business in New York, New York. Citibank filed its complaint against Defendants on January 10, 2014, alleging claims for breach of note and breach of guaranty. Automart is an Illinois corporation, is a citizen of the State of Illinois and ceased operations on August 1, 2013. Bee June is an individual residing in DuPage County, Illinois and is a citizen of Illinois. Starting in 2003, and at all relevant times, Bee June owned 30% of the shares of Automart. Bee June's business partner, Cherng–Chyang Liou ("Eric") owned the remaining 70% of the shares of Automart. Bee June was employed by Automart from 1992 until December 31, 2009, and again from July 2010 until November 2013. She was the Vice–President of Automart since at least 2006 and, as Vice–President, "ran all the daily operations" of Automart since at least July 2010.

*Original Loan and Guaranties.* On March 13, 2006, Citibank and Automart entered into a loan agreement (the "2006 Loan Agreement"), whereby Citibank agreed to loan and Automart agreed to borrow up to the principal sum of $1,500,000.00 (the "Loan"). Bee June executed the 2006 Loan Agreement on behalf of Automart as its Vice President. Pursuant to the 2006 Loan Agreement, Automart executed and delivered to Citibank a Promissory Note dated March 13, 2006 ("2006 Note") in favor of Citibank in the original principal sum of $1,500,000.00. Bee June executed the 2006 Note on behalf of Automart as its Vice President. To secure repayment of the obligations evi-

denced by the 2006 Note and any and all other obligations of Automart to Citibank then outstanding or thereafter incurred, Automart executed and delivered for the benefit of Citibank a Commercial Security Agreement, dated as of March 13, 2006, encumbering the property described therein as Collateral. Bee June executed the Commercial Security Agreement on behalf of Automart as its Vice President.

Bee June executed a Commercial Guaranty guaranteeing payment of Automart's indebtedness to Citibank, dated March 13, 2006 ("Guaranty"). The Guaranty defined indebtedness to include, among other things, future advances, renewals, and modifications originated by any Automart employee. "Indebtedness" includes, "without limitation, ... future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations, whether: ... originated by [Citibank] or another or others." The Guaranty is a "continuing guaranty" under which Bee June agreed to "guarantee the full and punctual payment, performance and satisfaction of the indebtedness of [Automart] to [Citibank], now existing or hereafter arising or acquired, on an open and continuing basis." The Guaranty also provides that it "will continue to bind [Bee June] for all the indebtedness incurred by [Automart] or committed by [Citibank] prior to receipt of [Bee June's] written notice of revocation, including any extensions, renewals, substitutions or modifications of the indebtedness."

The Guaranty authorized Citibank to make one or more additional loans to Automart or otherwise extend credit to Automart without notice or demand and without lessening Bee June's liability under the Guaranty. It also authorized Citibank to "alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the indebtedness...." In signing the Guaranty, Bee June waived all defenses to the Guaranty based on suretyship, including "any defenses arising by reason of ... any defenses given to the guarantors at law or in equity other than actual payment and performance of the indebtedness." The Guaranty could only be revoked in writing to Citibank.

*2007 Loan Documents.* Citibank and Automart executed and delivered, and entered into, a Business Loan Agreement dated July 11, 2007 (the "2007 Loan Agreement") whereby Citibank agreed to extend the 2006 Loan Agreement on the terms and conditions provided therein. The 2007 Loan Agreement provides that the Agreement "shall continue in full force and effect until such time as all of [Automart's] Loans in favor of [Citibank] have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement." Bee June executed the 2007 Loan Agreement on behalf of Automart as its Vice President. The 2007 Loan Agreement expressly names Bee June as providing an unlimited guaranty of the loan in favor of Citibank. It also expressly states that the promissory note executed therewith includes without limitation "any substitute, replacement or refinancing note or notes or credit agreement or loan agreement therefor."

Pursuant to the 2007 Loan Agreement, and to further evidence the obligation of Automart to repay the funds provided under the 2006 Note, Automart executed and delivered to Citibank a Note dated July 11, 2007 in favor of in the principal sum of $1,500,000.00 ("2007 Note"). Bee June signed the 2007 Note as Vice President of Automart.

*2010 Loan Documents.* Subsequently, the Loan was again modified, as evidenced

by Automart's execution and delivery to Citibank of a certain Promissory Note, dated April 29, 2010, made in favor of Citibank in the original principal sum of $1,000,000.00 ("2010 Note"). The 2006 Security Agreement, the Guaranty, the 2007 Loan Agreement, and the 2010 Note will be referred to as the "Loan Documents." Automart executed the 2010 Note on April 29, 2010. The 2010 Note effectively reduced the maximum amount available on the line of credit available to Automart from $1.5 million to $1 million. No other terms or conditions from the 2007 Note were changed in the 2010 Note.

In executing the 2010 Note, Automart expressly acknowledged and agreed that the 2010 Note remained secured by the March 13, 2006 Commercial Security Agreement, and that the 2010 Note amended and restated the 2007 Note. The 2010 Note provides that Automart "will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning on May 10, 2010, with all subsequent interest payments to be due on the same day of each month after that." The 2010 Note further provides that, upon Automart's failure to pay any amounts thereunder, Citibank may declare the entire balance immediately due and payable.

In July 2010, Eric, Automart's President, permanently left the country for Taiwan. After Eric left, Bee June ran all of the daily operations of Automart. As of July 10, 2010, the balance due from Automart on its line of credit with Citibank was $220,000.00. After Bee June was rehired by Automart in July 2010 and after Eric's departure, Automart made four draws on its line of credit with Citibank, totaling $450,000.00. Automart took the last draw on its line of credit with Citibank on or about December 30, 2011. Automart made its last principal payment on or about February 18, 2013. Automart made its last interest-only payment on September 10, 2013.

By letter dated October 28, 2013, Citibank notified Automart that, due to non-payment, it was in default under the Loan Documents, declared the entire outstanding balance of Automart's line of credit immediately due and payable in full, and demanded immediate payment thereof. By letters dated November 21, 2013, counsel for Citibank notified Automart and Bee June of their default under the Loan Documents, that the indebtedness evidenced thereby was fully due and payable and demanded payment of the same. Despite the notifications, neither Automart, nor Bee June, nor any third parties, have repaid the indebtedness due from them to Citibank under the Loan Documents. Automart and Bee June do not dispute that the loan evidenced by the Loan Documents has not been repaid to Citibank.

Automart and Bee June admit that the principal amount due and owing under the Loan Documents is $520,000.00. As a result of Automart's and Bee June's default under the terms of the Loan Documents, as of December 10, 2013, the following amounts are due and owing from Automart and Bee June to Citibank: Principal: $520,000.00; Interest: $5,257.78 (Per Diem after 12/10/2013: $57.78); Late Fee: $75.00; Total: $525,332.78. Further, pursuant to the Loan Documents, Citibank is entitled to recover from Automart and Bee June its attorney's fees, costs, and expenses incurred to enforce the terms of the 2007 Loan Agreement and 2010 Note. As of July 23, 2014, Citibank incurred $66,960.30 in fees and $1,414.75 in costs to enforce the Loan Documents.

**Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether factual issues exist, the Court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Weber v. Univ. Research Assoc., Inc.,* 621 F.3d 589, 592 (7th Cir.2010). The Court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin,* 578 F.3d 526, 529 (7th Cir.2009). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Info. Solutions,* 390 F.3d 969, 970 (7th Cir.2004) (citations omitted).

## Analysis

■ Citibank contends that Bee June is liable for the unpaid amounts under the 2006 Guaranty she executed. While modifications were made to the Loan Documents in 2007 and 2010, Citibank asserts that Bee June remains liable because the Guaranty language clearly and unambiguously provides that Citibank could make additional loans or otherwise extend credit to Automart without notice to Bee June, allowed Citibank to alter, renew or extend the terms of indebtedness, and included a provision that Bee June waived all suretyship defenses. *T.C.T. Bldg. P'ship v. Tandy Corp.,* 323 Ill.App.3d 114, 256 Ill.Dec. 82, 751 N.E.2d 135, 140 (2001) ("Where the terms of a guaranty contract are clear and unambiguous, they must be given effect as written, and under such circumstances, the meaning of a guaranty is a question of law.")

■ Bee June claims that the Loan Documents were materially altered without her consent and she therefore is discharged from any liability. It is true that "[a] guarantor is discharged from h[er] obligations with [an] alteration of 'the underlying contract' unless 'the essentials of the original agreement have not been changed and the performance required of the principal is not materially different from that first contemplated,' or where 'the guarantor has knowledge of and assents, either expressly or by implication, to such change.'" *Lyon Fin. Servs., Inc. v. Bella Medica Laser Ctr., Inc.,* 738 F.Supp.2d 856, 860 (N.D.Ill.2010) (quoting *Lawndale Steel Co. v. Appel,* 98 Ill.App.3d 167, 53 Ill.Dec. 288, 423 N.E.2d 957, 962 (1981)). But, as noted above, the clear language of the Guaranty provides that Bee June waived all suretyship defenses including "any defenses given to guarantors at law or in equity other than actual payment or performance of the indebtedness." (Pl.'s Stmt. Fact, Dkt. # 55, Ex. H at 2.) This waiver is binding. *Chrysler Credit Corp. v. Marino,* 63 F.3d 574, 577 (7th Cir.1995) (in case addressing guaranty, noting that "[w]hen [waivers] are clear and unambiguous, Illinois courts consistently enforce them") (internal quotation marks and citations omitted).

■ Moreover, Bee June fails to provide any evidentiary support for her contention that there was a material modification to the underlying loan. "The determination of whether a guarantor is exposed to an increase in the risk it originally undertook is a key variable in determining whether there has been a material change in the guaranty agreement." *Lyon Fin. Servs.,* 738 F.Supp.2d at 860 (citations, alterations and internal quotation marks omitted). As noted by Citibank, the 2010 loan modification reduced the available line of credit to $1,000,000.00. (Pl.'s Stmt. Facts, Dkt. # 55, ¶¶ 12, 31, 33, 35.) Moreover, the 2010 modification to the Note decreased

the applicable pre-default interest rate accruing on the obligations to the borrowers from a per annum rate of Citibank's Prime Rate + 1.5% to a per annum rate of Citibank's Prime Rate + .75%. (Pl.'s Reply, Dkt. # 66, Ex. A., Terrill Supp. Decl., ¶ 7.)

Bee June contends that the fact that Citibank obtained only Eric's signature on the Acknowledgment for the 2010 modification demonstrates Citibank's intent to rely only on Eric's guaranty for the 2010 modification, but not hers. In support, Bee June points to Exhibit F of Citibank's complaint, which includes a copy of the 2010 Loan Document as well as a document entitled "Acknowledgment by Guarantor." The Acknowledgment is signed only by Eric (although there is a signature line for Bee June) and appears to include a copy of a Post-it note which states, "Bee June signature is requested but not needed unless buy-out does not happen soon." Bee June asserts that a jury could conclude from the Post-it note (which she attributes to Citibank) that it intended to bind only Eric with respect to the 2010 modification and not Bee June.

However, the Court cannot rely on the Post-it note as an indication of Citibank's intentions. Bee June does not rebut the affidavit of Citibank Vice–President Scott Terrill, who is responsible for the administration and review of the loan and guaranties at issue, and attests that the copy of the Post-it note appears on the original signed Acknowledgment that is in Citibank's files. (Pl.'s Reply, Dkt. # 66, Ex. A, ¶ 9.) Terrill further attests that he did not author the note, does not know who wrote it, does not know where the original of the Post-it note can be found and does not know how a copy of the Post-it note came to be placed on the original signed document. (Id.) In addition, Terrill states that he inquired of current Citibank personnel who might have knowledge of the issue, but that he obtained no information regarding where the original of the Post-it note is, how a copy got on the original signed acknowledgment or who authored the note. (Id. ¶ 10.) Thus, there is no evidence that the Post-it note was authored by anyone at Citibank who had authority to speak on this issue. A copy of a Post-it note of unknown authorship found in a corporation's file has little or no probative value.

**Conclusion**

Because the clear and unambiguous language of the Guaranty binds Bee June not only to the original debt but also any extensions or alterations and precludes reliance on suretyship defenses to avoid liability, and, in any event, no material changes to the underlying loan were made that would permit Bee June to avoid continuing liability on the Guaranty, the Court grants Citibank's motion for summary judgment on Count III. As already noted, Automart concedes liability on Count I. Therefore, Citibank's motion for summary judgment is granted in full.

Citibank is directed to draft a proposed order and provide a copy of the draft to Automart and Been June Cheng within 10 days of the date of entry of this order The parties then have 10 days thereafter to meet and confer in an attempt to agree on the language of the judgment order. No more than 5 days after the meet and confer, Citibank shall file a copy of the proposed order and indicate whether or not it is agreed. If it is not agreed, Citibank shall briefly set forth Automart and Bee June Cheng's objections to the proposed order. Status is set for November 19, 2014 at 9:30 a.m.