In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2733

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CATALINO ROSARIO,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern
Division.
No. 94 CR 261--James B. Zagel, Judge.

ARGUED MAY 16, 2000--DECIDED DECEMBER 7,
2000

Before EASTERBROOK, RIPPLE, and ROVNER,
Circuit Judges.

ROVNER, Circuit Judge.  Catalino Rosario,
Porfirio Rivera, and Frank Vargas were
indicted on two counts of conspiracy to
distribute cocaine and attempted
possession of cocaine with intent to
distribute it in violation of 21 U.S.C.
sec. 846. Rosario filed a motion to quash
his arrest and suppress a pager found on
him during the arrest, which the court
denied. Rivera and Vargas pled guilty and
testified against Rosario and a jury
convicted him on both charges. Rosario
now appeals, challenging the court's
denial of his motion to quash the arrest
and suppress the evidence.

I.

   The trail that ultimately led to Rosario
began on April 15, 1994, when the
Missouri State Highway Patrol stopped a
brown Mazda minivan driven by Frank
Vargas that was weaving and moving
erratically. The van was registered to
Porfirio Rivera, but Vargas was the sole
occupant. A subsequent search of the van
revealed 46 packages of cocaine in hidden

panels in the van, with a total weight of 40.55 kilograms. After his arrest, Vargas agreed to cooperate with the police. He related that the owner of the cocaine was a man named "Pacho," whom he later identified as the defendant, Catalino Rosario. He declared that Pacho had hired him to transport the cocaine from Los Angeles to Chicago, and that Pacho had a total of 100 kilograms of cocaine for shipment to Chicago. Of that total, he had already delivered 37 kilograms to Chicago on an earlier trip, and 17 kilograms remained in Los Angeles awaiting transport. Vargas possessed three different pager numbers for Pacho including a new pager number that he was supposed to use upon arrival in Chicago to contact Pacho. Vargas also told them that he believed "Pacho" was just a nickname, and that Pacho had previously used a name of Rafinio Ray and also had used a first name of Arturo, but he did not know if those were aliases as well. The officers ran a computer check of those names in the DEA computer system, and found the name Rafinio Ray with an alias for the name of Arturo Robles. That provided some corroboration for Vargas' claim that "Pacho" was involved in the drug scheme.

   Based upon that information, a decision was made to attempt a controlled delivery in Chicago, at which time the Drug Enforcement Agency became involved in the case. Vargas and the agents checked into the Hampton Inn in Bedford Park, and Vargas paged Pacho. Approximately ten minutes later, Pacho returned the call to Vargas at the hotel. Pacho told Vargas that a person named "Jose" would be calling him. This call was recorded, but only Vargas' voice and not that of the caller was intelligible on the tape. The agents relied on Vargas for the identity of the caller and the content of the conversation.
   At approximately 8:00 p.m., a person identifying himself as "Jose" called Vargas and said he would come to the hotel the next morning. That conversation was recorded. "Jose" called again the next morning to inform Vargas that he was en route to the hotel, and he arrived at the hotel around 9:15 a.m. Agents later discovered that the person known as "Jose" was Porfirio Rivera--the same person in whose name the Mazda minivan was registered. After Rivera's arrival,

Pacho called Vargas at the hotel. The meeting between Vargas and Rivera and the conversation with Pacho were videotaped and recorded. In the telephone conversation, Pacho stated that he was flying from Los Angeles to Midway Airport on a flight that arrived around 6:00 p.m., and he needed to be picked up there. Vargas translated that conversation for the agents, and explained that Rosario generally flew on America West Airlines. After the telephone conversation, Rivera took the minivan keys and drove away in the minivan, at which time he was arrested.

That evening, the agents accompanied Vargas to the airport and positioned him in an area of the airport where he could view passengers who had disembarked from the planes. An America West plane arrived from Los Angeles at approximately 6:00 p.m., but the agents were unable to single out anyone departing it as "Pacho" based on the rather general description provided by Vargas. Vargas, however, spotted Pacho among the individuals who had been on the plane, and pointed him out to the agents. At that time, Pacho was briefly detained and questioned regarding his identity. He produced identification establishing that he was Catalino Rosario. He was ultimately brought outside, where Vargas again identified him as the person he knew as "Pacho." A subsequent search of Rosario yielded a card with one of the pager numbers that Vargas had possessed on it, and a pager. When a DEA agent dialed another of the numbers found in the minivan at the time Vargas was arrested, the pager Rosario had been carrying activated.

II.

Rosario argues that the police lacked probable cause to arrest him without a warrant, and that the pager and number found on him should be suppressed as the fruits of the unlawful arrest. He asserts that the police relied solely on Vargas' statements implicating Rosario, and that Vargas was an unproven informant whose statements relating to Rosario were not corroborated by other evidence.

Probable cause for an arrest exists when the law enforcement agents could reasonably believe, in light of the facts

and circumstances within their knowledge at the time of the arrest, that the suspect had committed or was committing an offense. United States v. Kincaid, 212 F.3d 1025, 1028 (7th Cir. 2000); United States v. Osborn, 120 F.3d 59, 62 (7th Cir. 1997). It is a flexible, practical common-sense standard that is met if the facts are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed. United States v. Colonia, 870 F.2d 1319, 1323 (7th Cir. 1989) (citations omitted); United States v. Evans, 27 F.3d 1219, 1228 (7th Cir. 1994). We review the district court's probable cause determination de novo, but accept the district court's findings of historical fact unless they are clearly erroneous and "give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Osborn, 120 F.3d at 62, quoting Ornelas v. United States, 517 U.S. 690, 699 (1996).

The arrest and subsequent search in this case was based upon the information provided by Vargas. Rosario argues that probable cause is not established here because the information was provided by an untested informant and lacked sufficient corroboration. Information from an informant can provide probable cause for an arrest if the information is reliable. United States v. Scott, 19 F.3d 1238, 1242 (7th Cir. 1994). For instance, in Illinois v. Gates, 462 U.S. 213, 246 (1983), the Court held that a highly detailed tip from an anonymous informant that was corroborated by independent police work was enough to establish probable cause for the search. In the present case, we are not faced with an anonymous informant, but rather an untested informant who is providing information that to some extent is incriminating, but which is provided in order to reduce his own criminal liability. In analyzing whether such information from an informant is sufficient to establish probable cause, we must consider the information provided by that informant--in amount and in the degree of reliability--and the degree of corroboration of that information by the officers. United States v. Navarro, 90 F.3d 1245, 1253 (7th Cir. 1996).

Although Vargas did not have a prior history as an informant that would

enhance the reliability of his information, the agents were able to corroborate a great deal of the information provided by him prior to the arrest and search of Rosario. For instance, Vargas claimed that the drugs were owned by Pacho, who also went by the names Rafinio Ray and Arturo. A check on the DEA computer system revealed a match for the name Rafinio Ray with an alias of Arturo Robles. This provided some corroboration of Vargas' claim that the person he identified as Pacho was in the drug business. Vargas further stated that when he arrived in Chicago he was to page a certain number and the owner of the cocaine, Pacho, would call him. That indeed transpired, in that Pacho returned his page. In addition, Vargas told the agents that Pacho had informed him that "Jose" would call regarding the cocaine. Rivera, using the name Jose, in fact called him later and made plans to pick up the cocaine the following morning. Because Vargas had not contacted "Jose" himself, that call could only have been triggered by Pacho after speaking with Vargas. When Jose came to the hotel, they discussed the prior shipment of cocaine that had been delivered, which corroborated Vargas' statement to the agents that he had previously delivered 37 kilograms to Chicago from Los Angeles. Finally, Vargas informed them that Pacho was arriving at 6:00 p.m. at Midway Airport, probably on America West Airlines. The agents confirmed that an America West flight from Los Angeles was landing in Chicago at that approximate time. Vargas then identified Rosario among the passengers that exited that plane. In short, Vargas' statements relating to the drug conspiracy were corroborated repeatedly when the events transpired as he foretold, and there is no basis in the record for disturbing the district court's fact findings to that effect. As the Supreme Court recognized in Alabama v. White, 496 U.S. 325, 329 (1990), when "an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity." See also Navarro, 90 F.3d at 1253 (relying on Gates and White, noting that information can be credited where the tip contains specific details about future actions not easily predicted, thus demonstrating "inside information.").

Here, the agents were able to corroborate numerous facts provided by Vargas, and that established a reasonable basis for them to credit his information regarding Rosario and to believe that a crime had been or was being committed. The Gates Court recognized that "only a probability, not a prima facie showing, of criminal activity" is required to establish probable cause, 462 U.S. at 235, and that standard is met here.

III.

Rosario raised a number of other arguments in the brief on appeal, but all were either withdrawn at oral argument or are meritless. He argued that the court erred in refusing to dismiss the indictment based on the use of hearsay in the grand jury. This argument is without merit because an indictment may be based upon hearsay, Costello v. United States, 350 U.S. 359, 363 (1956), and Rosario does not argue that this testimony was misrepresented as anything else. Furthermore, even if there were error (which is not the case here), any such error in the presentation of evidence before the grand jury would be harmless given the jury conviction at trial which indicates a proper grand jury proceeding would have still yielded an indictment. United States v. Fountain, 840 F.2d 509, 513-14 (7th Cir. 1988); Tyson v. Trigg, 50 F.3d 436, 442 (7th Cir. 1995).

The remaining arguments presented by Rosario were withdrawn at oral argument because they require development of facts outside the record and thus are more properly presented in a sec. 2255 petition. Specifically, Rosario withdrew his arguments regarding the Speedy Trial Act, ineffective assistance of counsel, and the alleged use of perjured testimony by the prosecutor. Regarding the use of perjured testimony, Rosario's attorney purported to withdraw only part of that argument, stating at oral argument that she withdrew that argument only to the extent it alleged that the government knew the witnesses were lying, as opposed to the government having reason to be suspicious. Such a "partial" withdrawal would be problematic indeed, because an adverse determination on direct appeal will have preclusive effect in any subsequent collateral attack. United States v. Brook, 125 F.3d 484, 495 (7th

Cir. 1997). A claim must be presented in its entirety rather than in a piecemeal fashion, lest the litigant risk the preclusive effect of the prior ruling. Therefore, it is inconsistent for Rosario to simultaneously assert that he is withdrawing the perjury issue to develop in a sec. 2255 petition, but is pursuing the perjury issue in part on direct appeal. Fortunately for him, the statement at oral argument was sufficient to withdraw the argument in its entirety and preserve it for sec. 2255 review where the extra-record facts necessary for the argument can be developed. Although Rosario's attorney sought to proceed with the argument that the government had reason to know the testimony was perjured, no such argument was raised in the brief and thus that argument was never before this court. Although the briefs mentioned the term "should have known" in the heading, the argument itself addresses only the actual knowledge of the government and never makes that alternative argument. Accordingly, when Rosario's attorney withdrew the perjury argument to the extent that it encompassed the actual knowledge of the government, she withdrew the entire perjury argument and preserved it for a potential sec. 2255 petition.

For the above reasons, with respect to the issues that remain before this court, the decision of the district court is affirmed.