**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William EILAND, Jr., Defendant–**
**Appellant.**

No. 02–4205.

United States Court of Appeals,
Seventh Circuit.

Argued July 8, 2003.

Decided July 24, 2003.

Before KANNE, ROVNER, and WILLIAMS, Circuit Judges.

## ORDER

A jury found William Eiland, Jr., guilty on one count of attempting to distribute at least 50 grams of "cocaine base, commonly known as crack," 21 U.S.C. §§ 846, 841(a)(1), and one count of possession with intent to distribute at least 5 grams of a "cocaine base, commonly known as crack,"

*id.* § 841(a)(1). The district court imposed a single 151–month term of imprisonment and two concurrent five-year terms of supervised release. Eiland appeals, arguing that the district court improperly denied his motion to suppress evidence and erroneously sentenced him under the guideline for "crack" rather than powder cocaine. We affirm.

Authorities arrested Eiland without a warrant when he arrived at a restaurant to deliver what they expected to be crack to a cooperating witness. They searched his car without a warrant and seized 61 grams of cocaine base; later they executed a search warrant at his apartment and seized another 29 grams. Eiland was indicted on one count of attempting to distribute the cocaine base in his car and one count of possessing with intent to distribute the cocaine base in his apartment. He moved to suppress the drugs, but after a hearing the district court denied his motion. Eiland then proceeded to trial.

At sentencing the probation officer recommended that Eiland's prison time be calculated with reference to the drug quantity table for "crack" rather than another form of cocaine. Eiland countered that the government had not established by a preponderance that the seized cocaine base was indeed "crack," but the district court overruled his objection and grouped the two counts for a total drug quantity of 90 grams of crack.[1]

On appeal Eiland first argues that his warrantless arrest was made without probable cause and tainted the subsequent searches of his car and apartment. The government responds that probable cause supported Eiland's arrest, and thus the two searches were proper. We review *de*

---

1. The district court should have imposed a sentence on both counts of conviction, so its single, 151–month prison term should be viewed as two fully concurrent terms. *United States v. Hatchett*, 245 F.3d 625, 630 n. 1 (7th Cir.2001).

*novo* the district court's denial of Eiland's motion to suppress, *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *United States v. Rosario,* 234 F.3d 347, 350 (7th Cir.2000), and may consider evidence introduced both during the suppression hearing and later at trial, *United States v. Tilmon,* 19 F.3d 1221, 1224 (7th Cir.1994).

At the suppression hearing three police officers testified that crack dealer Robert Leon began cooperating after his arrest in Gary, Indiana, and described one supplier known to him as "Bill" as a 6'6", African–American male weighing approximately 330 pounds. Leon, who had not worked for these officers previously but apparently had given information to other officers, explained that for the last three months Bill had twice a week sold him two ounces of crack for $1800. The officers testified that Leon reportedly would call Bill when he wanted crack and then meet him at a gas station or McDonald's in East Chicago, Indiana. Leon had in his wallet two phone numbers for Bill, who used a pickup truck or a blue Ford Crown Victoria to make deliveries.

Officer Cooper testified that on the day of his arrest Leon was directed to telephone Bill and arrange to buy crack. As Leon rode with officers to East Chicago, Cooper watched him use his own cell phone to dial one of the numbers from his wallet. Cooper monitored and recorded the conversation as Leon told Bill, "Need to see you man." Bill responded, "Okay. Let me see what I've got together over here," and then said, "[L]et me meet you at McDonald's. Give me a half hour." Bill later called Leon back; Cooper was unable to monitor or record this conversation, but he testified that Leon said that Bill needed time to "cook some up." Cooper again listened and recorded as Leon left Bill an agitated follow-up message de-manding to know what was happening and telling him to call because Leon was "star-vin' out here." Bill called back and ex-plained that he went to the wrong place—a gas station—and would meet Leon shortly. Cooper testified that during the four phone calls Leon did not discuss with Bill the type, amount, or price of the drugs.

The police witnesses further testified that around 7:00 p.m. that evening, after Bill's final call, they and Leon were watch-ing the East Chicago McDonald's parking lot when a blue Ford Crown Victoria en-tered the lot. The officers noted that the driver was a large African–American male, whom Leon identified as Bill. After stop-ping the car, the officers identified the driver as Eiland and arrested him. When questioned Eiland made no statements ex-cept to describe himself as 6' tall and 315 pounds.

At trial Leon testified that he had been buying "crack" from Eiland on a regular basis and for that reason never discussed drug type, amount, or price when speaking with Bill. Several officers testified that in Eiland's car they found just over two ounces of "crack" wrapped in black plastic and two cell phones each with Leon's phone number stored in memory. Officers also testified that they seized 29 grams of "crack" and boxes of baking soda from Eiland's apartment.

Police officers may search a car incident to a lawful arrest, *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *United States v. Sholola,* 124 F.3d 803, 817 (7th Cir.1997), and a war-rantless arrest is lawful when supported by probable cause, *see Rosario,* 234 F.3d at 350. Officers have probable cause to arrest when based on the facts and circum-stances within the officers' knowledge, they reasonably believe that the suspect had committed or was committing a crime. *Id.* Probable cause may be based on infor-

mation from an informant so long as the informant is reliable. *Id.* at 350–51; *United States v. Gilbert,* 45 F.3d 1163, 1166 (7th Cir.1995). An informant's reliability can be established through various means, including a showing of past reliability or by independent police corroboration. *Illinois v. Gates,* 462 U.S. 213, 237–38, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *United States v. Navarro,* 90 F.3d 1245, 1253 (7th Cir.1996) (stating that police corroboration of informant's facts made defendant's "innocent trip" suspicious).

■ Eiland insists that Leon was an informant of unknown reliability because he had not cooperated with law enforcement in the past. But Eiland misstates the record; police officers testified at the suppression hearing that Leon indeed had provided information to other officers in the past. The government, though, has never developed this point, and so for purposes of analysis we view Leon as an untested informant. Still, that does not mean that Leon was not *unknown* to the officers in this case—they had conducted several controlled buys from him. The officers expected Leon to have a drug supplier, and Leon's statements about his source were consistent with their expectations. In addition, Leon was pressed for details about his drug dealing almost immediately after his arrest, which left little time to spin a tale about his supplier. Leon provided a detailed, firsthand account of their relationship, *see United States v. Jones,* 208 F.3d 603, 609 (7th Cir.2000) (endorsing district court's view that informant's personal observations and specificity reinforced her reliability), and implicated himself in criminal activity, *see id.* (endorsing district court's view that informant's statements against her penal interest reinforced her reliability). Further, when Leon called Bill, it became apparent that the two men had a history of

working together—Bill knew why Leon called and how to call him back and volunteered the two meeting locations already disclosed by Leon. *See Rosario,* 234 F.3d at 349, 351 (finding significant that the confidential informant, who was arrested for transporting cocaine, stated that his "boss" was expecting his page, the informant paged his "boss," and the "boss" returned the page).

■ Eiland also contends that the officers failed to adequately corroborate Leon's story because they did not obtain subscriber information for the phone numbers in his wallet or run the registration for Eiland's car. But there was no need to do either. By the time the officers arrested Eiland, they had sufficiently corroborated Leon's other statements and did not need the subscriber records or car registration information to establish probable cause. *See Beauchamp v. City of Noblesville,* 320 F.3d 733, 744 (7th Cir.2003) ("[O]nce an officer learns sufficient trustworthy information establishing probable case, he is entitled to rely on what he knows in pursuing charges or an arrest, and is under no further duty to investigate."). The officers already had observed Leon contact Bill using one of the phone numbers from his wallet and had listened as Bill recognized Leon and the reason he called. In fact, Bill's return phone calls confirmed Leon and Bill's ongoing relationship because Leon did not give Bill a number at which to call him back. Bill's return calls also corroborated what Leon had told the officers about their usual meeting locations—Bill referred to both locations without prompting from Leon. Additionally, the officers confirmed Leon's description of Bill and his car—Leon even identified the driver as Bill—before they stopped him. At that point the officers could reasonably believe that Leon correctly predicted that Bill would be at-

tempting to deliver crack. *See Gates,* 462 U.S. at 244 (stating that when an informant is correct regarding some facts, it becomes more likely that he is right about others). Thus, they had probable cause to believe that Eiland was in the process of committing a crime, arrest him, and search his car his car incident to this arrest. The district court properly denied Eiland's motion to suppress.

■ Eiland also argues on appeal that the district court erred in concluding that the cocaine base seized from him was "crack." We review for clear error the district court's determination of the drug type. *United States v. Parker,* 245 F.3d 974, 977 (7th Cir.2001). The sentencing guidelines single out for harsher punishment those cocaine offenses involving crack, "a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." *See* U.S.S.G. § 2D1.1(c), note (D); *United States v. Earnest,* 185 F.3d 808, 812 (7th Cir.1999). The Sentencing Commission envisioned the increased penalty to apply to crack "as the term is generally understood," *United States v. Abdul,* 122 F.3d 477, 479 (7th Cir.1997), and the government must prove by a preponderance of the evidence that the drug at issue is crack. *Parker,* 245 F.3d 974, 977 (7th Cir.2001).

At trial Officer Williams testified that crack is made by heating or cooking powder cocaine with baking soda or other household products. Several witnesses described the seized cocaine base as "rocklike" and "chunk[y]," and Robert Krefft, a forensic chemist, testified that the substances seized were 57% cocaine base and could be described as "crack." Finally, the prosecution introduced the seized cocaine base.

In its jury charge the district court instructed that the government was required to prove for Count One that Eiland "attempted to deliver cocaine base to another person," and for Count Two that he "possessed cocaine base with the intent to distribute it." Nonetheless, the government reasons that the jury found Eiland guilty of attempting to distribute and possessing "cocaine base, commonly known as crack," which it says supports the district court's finding that the cocaine base was crack. At first glance, *United States v. Branch,* 195 F.3d 928 (7th Cir.1999), might seem to support the government's position—Eiland's indictment refers to "cocaine base, commonly known as crack cocaine," and the court cited the indictment's language as support for finding that the cocaine base was crack. *Id.* at 934. But the defendant in *Branch pleaded guilty* to distributing "cocaine base, commonly known as crack" and therefore *admitted* that he had sold crack. *Id.; see also United States v. Warneke,* 310 F.3d 542, 550 (7th Cir.2002) (stating that defendant's guilty plea "resolved all important matters against him" and "remove[d] all contest from the case"). Here, Eiland went to trial, and the jury was instructed only to decide whether he attempted to distribute and possessed *cocaine base,* not specifically crack. Thus, the government's argument misses the mark.

Still, the government met its burden. Leon testified that he regularly bought "crack" from Eiland and that Eiland thus understood that Leon was calling about buying crack. *See United States v. Booker,* 260 F.3d 820, 824 (7th Cir.2001) (stating that evidence that substance was crack included testimony that buyer wanted to purchase crack); *United States v. Sewall,* 159 F.3d 275, (7th Cir.1998) (stating that evidence that substance was crack included testimony that buyer negotiated to purchase crack and defendant and informant

distributed crack). Witnesses described the cocaine base as "rocklike" and "chunk[y]"—characteristics of crack, *see United States v. Linton,* 235 F.3d 328, 330 (7th Cir.2000); *United States v. Wade,* 114 F.3d 103, 105 (7th Cir.1997), and the district court viewed the cocaine base during trial, *see Sewell,* 159 F.3d at 279. Further, despite Eiland's contrary argument, Krefft testified explicitly that the seized cocaine base could be described as "crack." *See Booker,* 260 F.3d at 824 (noting that a lab analyst opined that the substance was "crack"); *United States v. Taylor,* 154 F.3d 675, 685 (7th Cir.1998) (stating that an expert witness testified that substance was cocaine base, which she knew as "crack"); *Abdul,* 122 F.3d at 479 (noting that a forensic chemist testified that the cocaine base was "crack"). Finally, Officer Williams testified that baking soda is used to make crack and that officers seized baking soda from Eiland's apartment. *See United States v. Booker,* 70 F.3d 488, 491 (7th Cir.1995) (explaining that crack may be made by boiling cocaine hydrochloride in baking soda and water). Thus, the district court did not err in sentencing Eiland.

AFFIRMED.