# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-2450

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ALVIN BROWN,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CR 257—**Charles R. Norgle, Sr.**, *Judge.*

———————

ARGUED MARCH 2, 2004—DECIDED APRIL 26, 2004

———————

Before CUDAHY, RIPPLE and DIANE P. WOOD, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Alvin Brown challenges the denial of his motion to suppress incriminating statements made after he was apprehended as the getaway driver in a scheme to rob two banks. Mr. Brown believes that his warrantless apprehension violated the Fourth Amendment. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

**I**

**BACKGROUND**

**A.**

Chicago police officers arrested Michael Dill just minutes after he robbed a bank in a Jewel Foods store at 114th and Halsted streets, and thirty-seven minutes after he first tried to rob another bank approximately twenty blocks from Jewel. Witnesses at both banks reported that Dill had a gun, although no weapon was found when Dill was apprehended while running away from the Jewel store. Immediately after his arrest, Dill confessed and admitted that he had an accomplice who was waiting in a getaway car on a side street west of the Jewel parking lot. Dill identified his accomplice as Alvin Brown and described the getaway car as a black Chevrolet Tahoe with a license plate number beginning with the letter "F." The information was then radioed to officers in the field, and several officers proceeded to the area around 114th and Halsted to search for the accomplice.

Sergeant Charles Long spotted a black Chevrolet Tahoe idling at the curb at 113th and Morgan streets, west of the Jewel lot. The male driver was the sole occupant. Long requested assistance, and Officer George Brown arrived shortly thereafter. Officer Brown, unable to see the driver's hands and concerned that he might be armed, drew his firearm and approached the Tahoe. Officer Brown then told the driver to shut off the ignition, exit the car and put his hands in the air. After the driver complied, Officer Brown holstered his weapon and patted down the driver. He then asked the driver his name and what he was doing in the area. The driver answered that his name was Alvin Brown and, according to the officer, said either that he had "run out of" or "was low on" gas. The officers thought that Mr.

Brown's story was strange because there was a quarter of a tank of gas left in the Tahoe, and there was a gas station a block away. At some point, the officers also verified that the license plate of the Tahoe began with the letter "F." After this brief period of questioning, Mr. Brown was handcuffed and placed in a police car. Five hours after his arrest, Mr. Brown confessed to his role in the bank robberies.

**B.**

After a two-day suppression hearing at which four Chicago police officers, one FBI agent and codefendant Michael Dill testified, the district court held that the officers had probable cause to arrest Mr. Brown. The court reasoned that Dill had implicated Mr. Brown in the robberies that had just occurred, that the officers thought that a vehicle must have been used in the robberies because of the considerable distance, but short time, between them and that Dill's statements about Mr. Brown's location, his vehicle and his license plate number all proved to be true when the officers went looking for the getaway driver. The court also determined that Officer Brown's decision to approach the Tahoe with his weapon drawn was justified by his belief that the robbery and the attempted robbery had occurred at gunpoint.

After the court denied his motion to suppress, Mr. Brown entered a conditional guilty plea and was sentenced to a term of forty months' imprisonment. In the plea agreement, Mr. Brown reserved his right to contest the suppression ruling on appeal.

## II

## DISCUSSION

In this appeal, the parties contest two issues: (1) whether the initial stop and pat-down of Mr. Brown was a proper investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968), and (2) if the initial stop instead constituted an arrest, whether probable cause existed to support it. The parties spend most of their briefs discussing the first issue, because an investigatory stop requires only "reasonable suspicion" of criminal activity, while an arrest requires the higher showing of "probable cause." *See United States v. Wimbush*, 337 F.3d 947, 949 (7th Cir. 2003). However, because we agree with the district court that probable cause for arrest already existed when the officers initially approached Mr. Brown, we turn first to the question of probable cause.

Probable cause exists if, at the time of arrest, the officers possess knowledge from reasonably trustworthy information that is sufficient to warrant a prudent person in believing that a suspect has committed, or is committing, a crime. *See United States v. Schaafsma*, 318 F.3d 718, 722 (7th Cir. 2003). Probable cause is a fluid concept based on common-sense interpretations of reasonable police officers as to the totality of the circumstances at the time of arrest. *See United States v. Sholola*, 124 F.3d 803, 814 (7th Cir. 1997) (citing *Ornelas v. United States*, 517 U.S. 690, 695 (1996); *United States v. Gilbert*, 45 F.3d 1163, 1166 (7th Cir. 1995)). Because police officers are entitled to rely on their experience in assessing probable cause, their judgments deserve deference. *Ornelas*, 517 U.S. at 699-700. However, although we review the district court's findings of fact only for clear error, our review of the district court's probable cause determination is de novo. *Id.* at 699.

Mr. Brown's primary argument is that the officers lacked probable cause because they confronted him, not on the

basis of "reasonably trustworthy" information, but on the basis of information obtained from an "informant," Dill, whose credibility was previously unknown to the police. Mr. Brown rests this argument on cases holding that information from anonymous sources might not be sufficiently reliable to constitute probable cause for arrest. *See, e.g.*, *Florida v. J.L.*, 529 U.S. 266, 274 (2000) (holding that anonymous call that gave police no predictive information to corroborate tip lacked sufficient indicia of reliability to justify stop and frisk); *United States v. Roberson*, 90 F.3d 75, 80 (3d Cir. 1996) (determining that tip from anonymous source containing information readily observable by any member of the public does not constitute reasonable suspicion).

This case is not controlled by those involving anonymous tips. The information that led to Mr. Brown's arrest did not come from an anonymous source; it came from Dill, his accomplice, who provided specific information naming Mr. Brown and identifying his role in the robberies, his present location and the make and model of the getaway car he was driving. Unlike an anonymous source whose basis for knowledge of the criminal activity cannot be discerned and who cannot be held accountable if a tip turns out to be false, *see J.L.*, 529 U.S. at 270, Dill provided the police with a reliable basis to conclude that he would have reason to know specific details about the robberies, including who else might be involved. This court and others that have dealt with inculpating statements in the probable cause context have held that such statements are weighty factors in establishing probable cause to arrest an alleged accomplice even if the statements have not been proven reliable. *See Schaafsma*, 318 F.3d at 722 (noting that accomplice's statements during drug buy that he was purchasing the drugs for a "guy" in the parking lot supported probable cause for arrest of individual observed sitting in a car in the lot);

*United States v. Rosario*, 234 F.3d 347, 350-51 (7th Cir. 2000) (noting that incriminating statements of an accomplice, an untested informant, may contribute to a determination of probable cause if the court assesses the amount and reliability of the information and its corroboration— even if the statements are partially intended to reduce his own culpability); *Eain v. Wilkes*, 641 F.2d 504, 510 (7th Cir. 1981) (indicating that accomplice testimony may be used to establish probable cause); *see also United States v. Allen*, 297 F.3d 790, 794 (8th Cir. 2002) (determining that corroborated information provided by codefendant against his penal interest was sufficiently credible even though he had no prior record as informant). In fact, several circuits have held that such statements are so presumptively reliable that they may support a probable cause determination even if uncorroborated. *See United States v. Patterson*, 150 F.3d 382, 386 (4th Cir. 1998) ("[I]t would be contradictory to allow a defendant to be convicted based on the uncorroborated testimony of his co-perpetrator while refusing to find that the same statement would be sufficient to support probable cause."); *Craig v. Singletary*, 127 F.3d 1030, 1044-45 (11th Cir. 1997) (en banc) (same); *United States v. Chin*, 981 F.2d 1275, 1278 (D.C. Cir. 1992) (participant who possesses direct personal knowledge of crime and has been "caught red-handed" has more reliable information about his accomplice than average informant); *United States v. Gaviria*, 805 F.2d 1108, 1115 (2d Cir. 1986) (if informant participated in crime, authorities do not need to prove informant's prior trustworthiness when relying on his statements to establish probable cause to arrest alleged accomplice).

Moreover, Dill's statements are not uncorroborated. The short time frame between his confession and the robbery of the bank at Jewel gave police the opportunity to verify details of Dill's statements in order to ensure that he was trustworthy. Dill gave the officers Mr. Brown's location, the

color and make of the getaway car and the fact that he would be alone in the car. When the police found the Tahoe in the location that Dill specified and were thus able to verify these important details, the entirety of Dill's story, including his statements about Mr. Brown's role in the robberies, assumed a high degree of reliability. *See United States v. Brack*, 188 F.3d 748, 756 (7th Cir. 1999) (considering source's information credible in part because authorities were able to verify details of informant's story); *Rosario*, 234 F.3d at 351 (same); *see also Gaviria*, 805 F.2d at 1115 (accomplice's story was confirmed when defendant matched description given by accomplice and was found at address given by accomplice). By contrast to the situation with an anonymous tipster, the police knew Dill's basis for knowledge of Mr. Brown's criminal act, and they were able to verify aspects of his story.

The context in which Dill implicated Mr. Brown in the robberies also reveals the trustworthiness of his statements. Dill confessed shortly after his arrest and within minutes of robbing the second bank. Dill did not simply accuse Mr. Brown of participating in a crime after the fact and point the officers to Mr. Brown's home address. *Cf. Thompson v. Wagner*, 319 F.3d 931, 935-36 (7th Cir. 2003) (explaining that probable cause to arrest was lacking when source identified defendant five months after the crime took place); *Roberson*, 90 F.3d at 80 ("The tip in the case at bar contained no details of future actions of third parties ordinarily not easily predicted." (internal quotation marks and citation omitted)). Rather, just minutes after robbing a bank, Dill gave the officers Mr. Brown's location within blocks of the second bank. Indeed, Mr. Brown's participation in the crime was still ongoing. *Cf. United States v. Scheets*, 188 F.3d 829, 839 (7th Cir. 1999) (suspect's proximity to bank supported finding of probable cause); *United States v. Robertson*, 305 F.3d 164, 168 (3d Cir. 2002) (suspect's close temporal and

physical proximity to crime supported finding of reasonable suspicion). Combined with the officers' reasonable belief that Dill must have had a getaway driver due to the short time frame (approximately half an hour) and the large distance (approximately twenty blocks) between the first and second banks, the police had every reason to believe that Dill's statement inculpating Mr. Brown was credible. Accordingly, Dill's confession constituted probable cause to arrest Mr. Brown.

Mr. Brown attempts to cast doubt on the reliability of Dill's statements by arguing that, when the police officers arrested Dill, they knew he was running in the opposite direction from where he said Mr. Brown was waiting in the Chevrolet Tahoe. Thus, submits Mr. Brown, the officers should have doubted rather than embraced Dill's information. But the fact that Dill was running away from Mr. Brown's location could not have detracted from the reliability of his statements because his path actually lessened the possibility that Dill had simply spotted Mr. Brown while fleeing from the bank and then falsely implicated him in the bank robbery. Moreover, the officers quite reasonably could have ascribed little significance to the direction Dill was running by the time they converged on him; indeed, Dill later explained that he was running away from the getaway car because he saw a police car in that direction.

In any event, even if Dill's statements are viewed as giving rise only to reasonable suspicion but not probable cause, the outcome would not change. Mr. Brown argues that he was arrested immediately—and not just detained in an investigatory stop—because Officer Brown approached the Tahoe with his weapon drawn and then removed Mr. Brown's wallet during the pat-down search. However, an officer may check an individual's identification in his wallet during a *Terry* stop. *See United States v. Hernandez-Rivas*, 348 F.3d 595, 599 (7th Cir. 2003). We also have recognized that,

because investigative detentions often pose a great risk of harm to the police, the "mere use or display of force in making a stop does not necessarily transform a stop into an arrest if the surrounding circumstances give rise to a justifiable fear for personal safety." *United States v. Tilmon*, 19 F.3d 1221, 1226 (7th Cir. 1994). Certainly a bank robbery is the type of violent criminal activity from which officers reasonably could infer that a suspect might be armed, *see id.* at 1227, and the officers here knew that Mr. Brown's accomplice, Dill, had robbed one bank and attempted to rob another with threats of force. Thus, Officer Brown's display of force, which ended as soon as he determined that Mr. Brown was unarmed, would not have turned the initial stop into an arrest.

Once Mr. Brown was detained, the officers were able to confirm more aspects of Dill's statement, including the fact that the man they had stopped was Alvin Brown and that the license plate of his Tahoe began with the letter "F." In addition, Mr. Brown's explanation for being in the area—that he had "run out of" or "was low on" gas—made no sense. Sitting in a car with the engine running would be an unusual way to solve that problem, particularly with a gas station only a block away. This implausible story, combined with the other aspects of Dill's statement that had been verified, added to the information possessed by authorities about Mr. Brown's role in the robberies and most certainly provided more than probable cause to arrest him. *See United States v. Edwards*, 242 F.3d 928, 935 (10th Cir. 2001) (implausible, inconsistent explanations support probable cause for arrest).

## Conclusion

Accordingly, the judgment of the district court is affirmed.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*