UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued May 4, 2006
Decided May 18, 2006

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

No. 05-1220

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>     *Plaintiff-Appellee,*<br>         *v.*<br><br>TONY T. CLARK,<br>     *Defendant-Appellant.* | Appeal from the United States<br>District Court for the Central District<br>of Illinois<br><br>No. 03-20057-001<br><br>Michael P. McCuskey,<br>*Chief Judge.* |

**ORDER**

Tony Clark appeals from his conviction and sentence of life imprisonment for possession with intent to distribute 50 or more grams of cocaine base (crack), 21 U.S.C. § 841(a), (b)(1)(A)(iii). He argues that the district court erroneously refused to suppress his confession which he says was the result of an illegal arrest. He also argues that his life sentence violates the Eighth Amendment and his Sixth Amendment right to a jury trial. We affirm Clark's conviction because the police had received information from several confidential sources that was sufficient to establish probable cause for an arrest. We also affirm his sentence because the Eighth and Sixth Amendment arguments are precluded by this court's and the United States Supreme Court's case law.

## Background

The Illinois state police received an anonymous tip on June 11, 2003 that Clark and his wife were distributing crack cocaine and heroin in Champaign-Urbana, Illinois. The tipster stated that Clark was "recently in possession of" five eight-balls of heroin, eight ounces of crack, scales, and $48,000. (R. 35 at 2.) The tipster also identified Clark's and his wife's cell phone numbers (the tipster said these were the numbers used by customers who wanted to buy drugs) and the color and model of the cars they drove. Finally, the tipster said that Clark got his drugs from a man named "Louis" who is from Chicago.

The police next received information from a confidential source using the assumed name of "Bo Powers." Powers had been known by the Champaign police for over five years and had provided them with accurate information in the past. In particular, just a week before Clark's arrest, Powers provided information that resulted in the arrest of a man named Jack Duge, as well as the recovery of five grams of a controlled substance and $11,000. When Duge was arrested, he had a cell phone number that Powers identified as belonging to Clark. Powers said that Clark had provided the seized drugs from Duge.

More generally, Powers had known Clark for twenty years, purchased drugs from Clark more than fifty times (most recently on June 5, seven days before the warrant issued), and sold drugs for him on "multiple occasions" in the past few years. Powers said Clark made trips to Kankakee and Chicago to purchase drugs in a white sports car that matched the description of Clark's car given by the tipster. Powers also spoke of going on trips to both of these locations with Clark to meet Louis, the man identified by the tipster as Clark's supplier. Powers said the Chicago meetings took place around 95th Street, which is where the tipster said Louis owned a gas station. Powers correctly identified Clark's two most recent residences. Powers also mentioned seeing Clark in possession of ten grams of crack as recently as June 5 and, on June 7, hearing Clark talk about a shipment of cocaine he had gotten from Louis.

The police also spoke with another confidential informant "Nancy Wood" who admitted purchasing heroin from Clark twice and confirmed that Clark drives a white sports car. They also discovered that Clark had two prior drug convictions and confirmed that cars matching the description given by Powers and the tipster were registered to Clark's wife and mother. Finally, they learned that Clark was stopped for a traffic violation on June 12 and, during the stop, a police dog alerted to the presence of narcotics in the car.

Armed with this information, the police applied for a search warrant of Clark's residence on June 12. After the warrant was issued, police stopped Clark for a traffic violation. They told him about the search warrant, handcuffed him, and drove him to his residence. A search of Clark's car, person, and residence did not

turn up any drugs. However, police were also aware that Clark's supplier, Louis, was associated with Sandra Westman, a woman living in the Champaign area. After reading Clark his rights, police told Clark that they "had information linking him to probable drug sales" at Westman's house and suggested that she would implicate Clark to save herself. (Appellant's Br. 5.) Although police had not found any drugs at Westman's house at this point, the tactic worked: Clark confessed that he had been selling crack and directed police to thirty-one "eight-balls" of crack that were stored in Westman's house.

## Analysis

Clark's principal argument on appeal is that police did not have probable cause to arrest him because, at the time of the arrest, they knew that some of the information given them by the tipster—namely that Clark would be in possession of eight-balls of heroin—was false. He also says that they knew that some of Powers' information was false because Powers told police that Clark did not use safehouses, a statement undermined by the fact that no drugs were found at Clark's home. Clark asserts that since his arrest was illegal and his confession was the result of the arrest, the confession should be suppressed. The district court determined that the facts presented to obtain the search warrant were sufficient to show probable cause for an arrest. We review that conclusion de novo, *United States v. Brown*, 366 F.3d 456, 459 (7th Cir. 2004).

First, it is unclear whether police were aware of the "inaccuracies" in the informants' information at the time they arrested Clark. Clark asserted at oral argument that he was not arrested until he was Mirandized at his house, at which point the police had already conducted their unsuccessful searches of his person, car, and home. But Clark said in the district court that he was "not free to leave" while being transported from the location of the traffic stop to his home. (R. 53 at 3.). This suggests that he was arrested at the traffic stop, before the police had completed any of their searches and before they knew that they would not find the drugs mentioned by the tipster in Clark's immediate possession.

In any case, even assuming that Clark was not arrested until the searches were completed, he overstates his case by saying that the police "affirmatively knew that the informants were substantially wrong." (Appellant's Br. 8.) The discovery of drugs at Westman's house might have disproved Powers' assertion that Clark did not use safehouses, but the police did not discover the drugs at Westman's house until after Clark confessed. As for the tipster's statements, the affidavit submitted in support of the application for the search warrant says that the tipster told police that Clark was "recently in possession" of drugs. (R. 35 at 2.) That Clark did not have drugs on his person, in his car, or at his home when he was searched does not undermine the truth of the tipster's statement. Clark could have had the drugs

"recently" and sold them before the police showed up or he could have stored them somewhere else (as in fact turned out to be the case).

Although the police's ability to corroborate information in a tip is important to an assessment of its reliability, *Illinois v. Gates*, 462 U.S. 213, 241–42; *United States v. Olson*, 408 F.3d 366, 371 (7th Cir. 2005); *United States v. Huebner*, 356 F.3d 807, 814 (7th Cir. 2004); *United States v. Rosario*, 234 F.3d 347, 351 (7th Cir. 2000), police are not required to confirm everything an informant tells them before arresting a suspect nor are informants required to be correct 100% of the time. *See Huebner*, 356 at 816 (7th Cir. 2004) (finding probable cause even though police could not corroborate all of facts in informant's tip); *United States v. McClinton*, 135 F.3d 1178, 1183 (7th Cir. 1998) (finding probable cause even though some of informant's statements were incorrect). On the contrary, probable cause is determined using a "totality of the circumstances" test. *Gates*, 462 U.S. at 230–31; *Brown*, 366 F.3d at 458.

In this case, although the police were not able to corroborate everything the tipster said, they were able to confirm several things, both through their own investigation and through conversations with other informants. Specifically, the police confirmed the information that Louis was Clark's supplier, as well as the location of their transactions. The police also confirmed the details given by the tipster about Clark's cars. Finally, police knew that, earlier on the day of Clark's arrest, a police dog had alerted to the presence of drugs in one of Clark's cars, suggesting that he had, as the tipster stated, recently possessed drugs.

Clark's argument also ignores the many other ways in which the information provided by the informants was reliable. Both Powers and Wood had been reliable confidential informants in the past. *United States v. Rucker*, 138 F.3d 697, 700 (7th Cir. 1998) (fact that informant was known to police and had been reliable in the past supported district court's finding of probable cause). Both informants also implicated themselves in criminal activity—an indicator of increased reliability, *Olson*, 408 F.3d at 371; *Brown*, 366 F.3d at 459—and both based their information on firsthand encounters with the defendant, *see Olson*, 408 F.3d at 371 (little weight given to statements of informant that were based on secondhand information she received from an unnamed "concerned citizen").

In addition, the information provided by Powers was quite detailed. *See Huebner*, 356 F.3d at 814 (amount of detail in tip is important in assessing its reliability); *Rosario*, 234 F.3d at 351 (same). Powers not only knew background information about Clark, such as his two most recent addresses and the color and model of his cars; Powers also provided the name of Clark's supplier, information about where Clark purchased his drugs, and information that Clark had supplied the drugs to an individual who had recently been arrested in possession of

narcotics. The background information about Clark's homes and vehicles was all confirmed by the police's independent investigation. Furthermore, the information about Clark's supplier and the location of Clark's drug buys matched the information given by the tipster. Although the police did not independently corroborate the informants' statements about Clark's future actions, such as where and when he would meet Louis to buy drugs, *Rosario*, 234 F.3d at 351; *United States v. Navarro*, 90 F.3d 1245, 1253 (7th Cir. 1996), the other information obtained by the police in their investigation was more than sufficient to establish probable cause for the arrest.

As for his sentencing arguments, Clark concedes that they are precluded by this court's and the Supreme Court's case law and that he makes them solely to preserve review by the Supreme Court. In any case, both arguments are without merit. Clark first argues that the life sentences mandated by 21 U.S.C. § 841(b)(1)(A) for repeat drug offenders are cruel and unusual punishment. The contention is foreclosed by *Harmelin v. Michigan*, 501 U.S. 957 (1991) (upholding life sentence for a single drug conviction against an Eighth Amendment challenge); *see also United States v. Jensen*, 425 F.3d 698, 708 (9th Cir. 2005) (upholding mandatory life sentence under § 841(b)(1)(A) against Eighth Amendment challenge), *cert. denied*, 126 S. Ct. 1664 (2006); *United States v. Washington*, 109 F.3d 335, 338 (7th Cir. 1997) (holding a similar statute mandating life sentences for individuals convicted of three violent felonies does not violate the Eighth Amendment). Clark does not identify a single case in which § 841(b)(1)(A) was held to violate the Eighth Amendment. Instead he points to two cases in which states' recidivism statutes were held unconstitutional as applied to certain defendants. However, both of these cases involved defendants whose most recent offenses were thefts involving less than $200. Clark's most recent offense, by contrast, involved the possession and distribution of a significant amount of crack.

Clark next argues that his sentence violates the Sixth Amendment because his prior convictions were not proven to a jury beyond a reasonable doubt as required by *Apprendi v. New Jersey*, 530 U.S. 466 (2000). But *Apprendi* by its own terms does not apply to prior convictions. *Id*. at 489–90. Even if it did, Clark's life sentence does not exceed the statutory maximum sentence for his offense of conviction. § 841(b)(1)(A)(iii). It is a mandatory minimum sentence, and the Supreme Court has held that *Apprendi* does not apply to mandatory minimums. *Harris v. United States*, 536 U.S. 545, 565 (2002).

For the above reasons, we AFFIRM Clark's conviction and sentence.