

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-27-2007

# USA v. Nigro

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2348

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Nigro" (2007). *2007 Decisions.* Paper 1562.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1562

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-2348
_____

UNITED STATES OF AMERICA

v.

JOHN NIGRO,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 05-cr-00062)
District Judge:  Honorable Jan E. DuBois
_____

Submitted Under Third Circuit LAR 34.1(a)
February 12, 2007

Before:  SMITH and FISHER, *Circuit Judges*, and DIAMOND,[*] *District Judge*.

(Filed: February 27, 2007)
_____

OPINION OF THE COURT
_____

_____

[*]The Honorable Gustave Diamond, United States District Judge for the Western
District of Pennsylvania, sitting by designation.

FISHER, *Circuit Judge*.

John Nigro appeals the judgment of conviction and sentence entered by the District Court. Nigro claims that the District Court erred by denying his motions to suppress physical evidence. For the following reasons, we will affirm the conviction and sentence.

I.

As we write only for the parties, who are familiar with the factual context and the procedural history of the case, we will set forth only those facts necessary to our analysis. A residence in Philadelphia was burglarized on October 12, 2004, and numerous items were stolen, including a safe. That same day, a witness, John Sacco, saw three people in a Mercedes-Benz pull up next to a dumpster. According to Sacco, the driver was a woman, and the two passengers were men. The two men got out of the car and threw something into the dumpster, which made a "loud bang." Sacco described the two men as follows: (1) white, bald head, 35-40 years old, 5'9"–5'10", thin build, wearing a white t-shirt and jeans, and (2) white, 30 years old, 6', black hair coming out of a black baseball cap, thin, and wearing a white t-shirt. Sacco informed the police of what he saw, and the police found the Mercedes. The police also found items stolen from the residence in the dumpster, including the safe.

The police then interviewed the owner of the car, Dante Cuticchia (a.k.a. Veasey).[1]

Veasey informed the police that he had lent his car to Nigro and Thomas Bysura. Sacco was shown a photo array, which included pictures of Bysura and Nigro. However, he only identified Bysura as one of the men he saw by the dumpster. Bysura was arrested, and informed the police that he and Nigro had thrown the safe into the dumpster as a favor for Veasey. Bysura also stated that Veasey drove him and Nigro in the Mercedes to the dumpster.

The police sought an arrest warrant for Nigro. The warrant was issued on November 1, 2004, and it included an affidavit of probable cause authored by Detective Stephen Caputo. The affidavit indicated that Sacco saw two males and a female pull up in a car next to the dumpster. He watched the two white males get out and throw a box with a safe into the dumpster.[2] Sacco's description of the physical appearances of the men were not included.[3] The affidavit also stated that Sacco identified Bysura in the photo array, but it did not provide that Nigro was not identified even though his picture was also in the array. It also included the statement by Veasey that he had lent his car to

---

[1]Because the parties and the District Court refer to Cuticchia as Veasey, we also use that name.

[2]Based on Sacco's statement he did not actually see the two men throw a safe or a box into the dumpster. He heard a loud bang, and then he saw them throw something else into the dumpster. He followed the car, and watched the individuals get out of the car at another location. He then went back to the dumpster and saw that there was a safe inside.

[3]It appears from the record that Nigro is approximately 5'7" and was forty-three at the time of the burglary and arrest.

Bysura and Nigro, and that Bysura stated that Veasey drove Bysura and Nigro to the dumpster where Bysura and Nigro threw out the safe.

Nigro was arrested on December 10, 2004, after the police received a tip that Nigro was at a particular residence and that he was armed.[4] The police did not find Nigro inside the house, and searched the surrounding area. Detective Robert Conn spotted Nigro crouching in the backyard. Detective Conn yelled "Police," and called for back-up. Detective Raymond Evers and Officer Gary Harkins responded immediately. Detective Conn pulled Nigro up and began to handcuff him. At the same time, Detective Evers picked up a green bag that was located "directly right next to" Nigro. Based on the weight and the feel of the bag, Detective Evers knew that it contained a gun. He opened the bag and found a gun. At the time the bag was opened, Nigro was handcuffed.

Nigro was indicted on February 8, 2005, with one count of possession of a firearm by a convicted felon, in violation of §§ 922(g)(1) and 924(e). Nigro's counsel made a motion for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), claiming that the discrepancy about what Sacco observed was grounds for a *Franks* hearing. The District Court denied the motion.

Nigro then made a pro se motion for a *Franks* hearing. He argued that the discrepancy between Sacco's description of the second male and Nigro's actual physical appearance, the fact that Sacco did not identify Nigro in the photo array, and the

_____

[4]Nigro had eluded capture on the three prior occasions.

4

discrepancy between Veasey's and Bysura's statements about whether Veasey was present at the time of the dumping were all facts that should have been included in the affidavit. After holding a *Franks* hearing, the District Court denied the motion to suppress the gun. It determined that there was no evidence that the police intentionally, knowingly, or recklessly omitted information from the affidavit. Further, it held that even if all of the information was added to the affidavit, probable cause would not be vitiated. Nigro also made a motion to suppress the gun claiming that it was obtained without a warrant and its discovery did not constitute a search incident to arrest. The District Court denied the motion holding that the gun was recovered during a search incident to a valid arrest. A trial was held, and a jury found Nigro guilty on October 6, 2005.[5] He was sentenced on April 7, 2006, to ninety-six months imprisonment. Nigro brought this timely appeal.

## II.

We have jurisdiction over this case pursuant to 28 U.S.C. § 1291. We review a district court's denial of a motion to suppress "for clear error as to the underlying factual findings and exercise[] plenary review of [a district court's] application of the law to those facts." *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

On appeal, Nigro first claims that the District Court erred by denying his motion to suppress the gun because the affidavit of probable cause omitted material information and

---

[5]Nigro made a pro se motion for reconsideration of his *Franks* motion after the trial, which was also denied.

made material misrepresentations of fact. *Franks* acknowledged that a criminal defendant has the right to challenge statements made in an affidavit of probable cause. *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006). At a *Franks* hearing, "the defendant must ultimately prove by a preponderance of the evidence: (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions were material, or necessary, to the probable cause determination." *Id.* (internal citations omitted). As the District Court determined, there is no evidence in the record that Detective Caputo knowingly or deliberately omitted or misrepresented any of the information included in the affidavit. However, there is sufficient evidence that Detective Caputo may have recklessly disregarded the truth. In *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000), we explained that a determination of whether an officer recklessly disregarded the truth includes consideration of whether the officer recklessly omitted facts that a reasonable person would want to know and whether the officer "has obvious reasons to doubt the truth of what he or she is asserting." A reasonable person would want to know that Sacco's description of the second male did not match Nigro's actual description, and that Sacco failed to pick Nigro out of the photo array. It is also likely that Detective Caputo had reason to doubt his assertions in the affidavit because this information was omitted.

Regardless, Nigro failed to meet his burden on the second prong. We agree with the District Court that even including the information that Nigro alleges was omitted and

6

deleting what he claims are misrepresentations does not vitiate the probable cause. The statements by Veasey and Bysura put Nigro in the tan Mercedes that Sacco saw on the day of the burglary, and Bysura puts Nigro at the dumpster. Additionally, Bysura's statement of identification is particularly reliable in the probable cause context because he is an accomplice. *See*, *e.g.*, *United States v. Brown*, 366 F.3d 456, 459-60 (7th Cir. 2004). Therefore, we will affirm the District Court's denial of Nigro's motion to suppress the gun on this ground.[6]

Nigro also claims that even if the arrest warrant was supported by probable cause, the search of the bag was not within the scope of a search incident to arrest. He argues that because the police did not have a warrant to search the bag, and the search was not within an exception to the warrant rule, the gun should have been suppressed. In *United States v. Myers*, 308 F.3d 251 (3d Cir. 2002), we discussed the scope of the search incident to arrest in this type of context. We recognize that our discussion of the search incident to arrest in *Myers* was likely dicta because we decided the case on other grounds. *Id.* at 266 (holding that there was not probable cause for arrest, but even if there was the gun should have been suppressed because the search of the bag exceeded the scope of a search incident to arrest). Regardless, we agree with the analysis used in *Myers*.

In *Myers*, we acknowledged the teachings of *Chimel v. California*, 395 U.S. 752 (1969), where the Supreme Court held that a search incident to arrest included the

---

[6]Because we hold that the affidavit of probable cause was valid, we do not reach the Government's argument that the good faith exception to the warrant rule applies.

defendant's person and the area within his immediate control. *Myers*, 308 F.3d at 267 (internal quotations and citations omitted). We explained that there are both geographic and temporal limitations for a search incident to arrest. *Id.* at 266-67. We also approved of the approach used by the United States Court of Appeals for the District of Columbia which held that there must be an objective basis for a search incident to arrest. *Id.* (quoting *United States v. Abdul-Saboor*, 85 F.3d 664, 670 (D.C. Cir. 1996)). If there is an objective basis for the arresting officer to fear the arrestee or the surrounding environment, "'a search of the area where the arrest occurred . . . is a search incident to arrest.'" *Myers*, 308 F.3d at 267 (quoting *Abdul-Saboor*, 85 F.3d at 670). We agree with the District Court that an objective basis existed for the search of Nigro's bag, which was located directly next to him when he was arrested. The officers had information that Nigro was armed, and he was hiding in a dark backyard. The bag was picked up at the same time Nigro was being handcuffed and was opened when he was handcuffed. This search was within both the temporal and geographic limitations necessary for a valid search incident to arrest. *Myers*, 308 F.3d at 266-67. The search was proper, even though Nigro was actually handcuffed when the bag was opened. *Abdul-Saboor*, 85 F.3d at 670. Therefore, we will affirm the District Court's denial of Nigro's motion to suppress the gun on this ground as well.

III.

8

For the foregoing reasons, we will affirm the District Court's judgment of conviction and sentence because the District Court properly denied Nigro's motions to suppress the gun.